## LOIS FISHER v. INDEPENDENT SCHOOL DISTRICT NO. 118.

215 N. W. 2d 65.

February 1, 1974—No. 43987.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly* and *Craig W. Gagnon,* for appellant.

*Peterson, Tupper & Smith* and *Harlan E. Smith,* for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Scott, JJ., and considered and decided by the court.

TODD, JUSTICE.

Relator appeals from an order discharging a writ of certiorari issued by the district court to review the action of respondent school district in terminating relator's position as a tenured teacher. She challenges the sufficiency of the notice of termination and the reasonableness of the notice of the hearing held pursuant to statute. We reverse.

Relator was employed as a full-time special education teacher by respondent school district and had attained tenure in her position. She was certified in her field for grades kindergarten through 12. In the school year 1971-1972, relator taught eight children with an age span of 8 to 13.

On April 13, 1971, Al Baas, then special education regional consultant, sent Reuben Grossmann, superintendent of respondent school district, a summary of Baas' 2-day visit to the school to review the district's special education group. A copy of the report was sent to relator. A portion of the report recommended that the district develop a separate special education program in the junior-senior high school with a shifting of emphasis to

the vocational area. Relator testified that no discussion regarding this communication was held in the spring of 1971, but in the fall of 1971, she met with George Cassell, special education director of the Tri-County Special Education Cooperative, and her school principal to review this report and implement its recommendations. Mr. Cassell at that time stated: "These men are higher than I am. Of course we will go ahead with it and attempt to implement this program." However, it was not until sometime during the week prior to March 14, 1972, that Mr. Cassell recommended the school district special education program be expanded to the junior high school. Under his proposal the elementary division would consist of four children, ages 9 through 12, and the junior high division would include four 13- and 14-year-olds and would be vocationally oriented. He advised that state funding would only be continued if the division of age groups was made to comply with state guidelines. The program was presented to the school board at its March 14, 1972, meeting. The board adopted the program and included with the adoption the elimination of relator's full-time tenured position, substituting two part-time special education teaching positions.

On March 15, 1972, relator was notified orally of the school board's intention to terminate her full-time contract and on March 16, 1972, was given a formal notice of her termination. The notice stated as follows:

"In order that a Group Supplemental Special Education program may be put into effect for the 1972-73 school term, with two (2) part-time special education teachers—not to exceed three (3) hours per day per teacher—it is the intent of the Board of Education to terminate your full-time contract as a special education teacher at the end of the 1971-72 school term and issue to you for the 1972-73 school term a contract for part-time work as a special education teacher not to exceed three (3) hours per day.

"It is the belief of the Board of Education and the Director

of Special Education that a Group Supplemental Special Education Program will better meet the needs of the students.

"Under the statute you are entitled to a hearing before the Board of Education and you must request a hearing within fourteen (14) days of this notice. Failure to request a hearing within the allotted time will forfeit your right for such a hearing."

Relator acknowledged receipt of the written notice on March 16, 1972, and thereafter contacted the Minnesota Educational Association, to which she belonged. Apparently through their efforts, she was placed in contact with her present counsel. The attorney's first contact with relator was a phone call on March 25. Following this phone conversation, a notice was directed to the school board by the attorney under date of March 27, 1972, demanding a hearing pursuant to the statute. The school board acknowledged that this demand was received on March 29, 1972. On the same day, at 4:15 p. m., the school board dispatched telegrams to relator and her counsel advising that a hearing would be held at 4 p. m. on March 30, 1972. The telegram was received by relator at 9:45 p. m. and by her counsel on the following morning. Relator's attorney, after meeting with her for about one hour prior to the meeting, formally objected on the record to holding the hearing that day. He challenged the timeliness and reasonableness of the notice of hearing and stated that he was inadequately prepared to proceed. The school board, however, voted to proceed with the hearing.

The hearing was held and testimony taken from Mr. Cassell, Mr. Grossman, the superintendent of schools, some other witnesses, and from relator. A careful examination of the record discloses that the school board was relying on Mr. Cassell's statement that state funding would be unavailable unless the age groups were divided. This is not disputed by relator. However, the record contains no competent evidence whatsoever that state guidelines required that the two age groups be taught by separate teachers. At the hearing the school board raised scheduling difficulties for the first time. This claim could not be met by re-

lator, as she had no advance knowledge of this alleged problem. No testimony was received as to the nature of the so-called scheduling difficulties. At the close of testimony, the school board prepared and entered its order terminating relator's contract for the school year 1971-1972.

■ Relator is a tenured teacher within the contemplation of Minn. St. 125.12. The parties hereto are governed by the legislative pronouncements contained in that section regarding termination of teachers' contracts. Grounds for termination are provided for in § 125.12, subd. 6, including discontinuance of position under paragraph (e).

This court has held that school boards must strictly comply with the procedural provisions of similar statutes which preceded § 125.12. Zeller v. Prior Lake Public Schools, 259 Minn. 487, 108 N. W. 2d 602 (1961). See, also, Hueman v. Independent School Dist. No. 77, 243 Minn. 190, 67 N. W. 2d 38 (1954).

■ Section 125.12, subd. 4, requires that the board notify the teacher in writing, stating its grounds for the proposed termination in reasonable detail. At the time the board notified relator of the termination of her contract, § 125.12, subd. 4, further provided that any termination must be completed prior to April 1.[1]

Relator contends that the notice of March 16 failed to advise her of any statutory ground for termination. We cannot accept this contention since, although the notice does not specifically use the words "discontinuance of position," a fair reading of the notice clearly conveys to relator that her position as a full-time special education teacher was being discontinued.

■ Relator, acting through her counsel, filed the required statutory written request for hearing with the board within the proper time period. Section 125.12, subd. 9, requires that such a hearing shall be held upon appropriate and timely notice to the

---

[1] Minn. St. 1971, § 125.12, subd. 4, was amended by L. 1973, c. 128. The amendment may have removed the requirement that termination of a tenured teacher's contract be completed before April 1. However, the amendment does not affect this case.

teacher and further provides that the teacher may be represented by counsel at such hearing.

The leading case in Minnesota on the interpretation of the statutory procedure for termination of a teacher's position based on discontinuance of position is State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544 (1942). Speaking through Mr. Justice Streissguth, our court specifically laid out the scope of review by this court of such decisions and the practices and procedures that must necessarily be followed by the school board in conducting such hearings. He noted that unlike some other states Minnesota does not permit the discontinuance of a position without a hearing. There we said (213 Minn. 570, 7 N. W. 2d 555):

"The very fact that a hearing is required where the asserted ground for discharge is 'discontinuance of position or lack of pupils' indicates that the legislature did not intend to leave the question of the actual existence of such ground to the arbitrary whim of the school board, but, as in other cases, to require the exercise of a sound and honest discretion based upon existing facts and circumstances of a substantial nature and upon a correct theory of law. But this is the full extent to which courts are permitted to inquire."

As indicated above, our statute requires timely notice of the hearing. Not even the broadest interpretation of this requirement would permit the conclusion that the notice in this case was timely. A hearing is a matter of right to the teacher and must be a meaningful process. In addition, the teacher is entitled to counsel, and counsel is entitled to reasonable opportunity to prepare for such a hearing. The procedures followed in this case totally preclude a meaningful hearing and proper assistance of counsel to the teacher involved. Thus, they render the action of the school board invalid.

In meeting relator's challenge of timeliness, the school board seems to imply that she had some obligation to file her request for hearing immediately upon receipt of the notice of termination

because of the April 1 deadline for meeting next year's contract. Such a position is perverse and directly contrary to the provisions of the statute then in effect. In those cases where termination was sought under the statute by the school board, the obligation to meet the April 1 deadline fell upon the school board and not upon the teacher. In the Zeller case, speaking to this question, we said (259 Minn. 492, 108 N. W. 2d 605):

"* * * This section provides that, as a prerequisite to termination of a contract such as plaintiff's by a school board, the board shall notify the teacher of the proposed termination and state its reason therefor. It also provides that, within 10 days after receipt of such a notification, the teacher may make written request for a hearing thereon before the board and that such a request must be granted before the board may take final action on the case. April 1 is made the deadline for termination of the contract, and it would follow that sufficient time must be provided for in the notice of proposed termination to permit accomplishment of such prerequisites before such deadline."

We hold that the obligation referred to in the Zeller case is that of the school board. It is the board which has set in motion the procedures of termination. The board is charged with notice of the statutory prerequisites and must fairly anticipate that the teacher will exercise her right to use time given her to determine whether or not she should request a hearing. It was the obligation of the school board to plan its action in such a way as to permit accomplishment of all the prerequisites before the deadline imposed by the statute before its amendment in 1973.

The trial court determined this issue on the premise that the only question to be answered at the hearing was whether the school district was going to discontinue the full-time position and hire two part-time teachers. Evidently the court believed that, as this decision was within the administrative province of the school board, strict compliance with procedural requirements was unnecessary. We cannot accept this reasoning as a basis to

subvert the statutory requirements that the teacher receive timely notice and be permitted assistance of counsel. We previously pointed out that the legislature has seen fit to provide a tenured teacher with the right to question a termination based on the discontinuance of his position. A fully developed record may adequately present to the school board evidence regarding the state requirement of whether or not the segregated groups could be taught by a single teacher and the relative efficiency involved in employment of a single teacher as opposed to employment of part-time teachers. If a properly convened hearing is held and the same determination made, the scope of review by this court is quite limited. However, the fact that the teacher may have difficulty in presenting evidence is not a sufficient ground to abrogate her right to a properly convened hearing.

The order of the trial court discharging the writ of certiorari is reversed and the matter remanded to the trial court with instructions to order respondent to reinstate relator as a tenured teacher.

YETKA, JUSTICE (concurring specially).

I agree with the decision reached by the majority, but I differ on what constitutes proper notice of a hearing. I submit notice would have been timely had the notice of termination contained a clause to the effect that if the teacher were to request a hearing, the hearing would be held on March 30 or March 31 and had set forth the time and place.

It appears that March 14 was the earliest date the board of education could give notice because it was at that particular meeting that it was advised that the state Department of Education guidelines required a new special education program. Relator acquired verbal notice on March 15 of the termination of her contract and, under the statute, had 14 days to request a hearing. Since the board did not set a hearing date in its original notice, the date of said hearing was largely under the control of the teacher and her attorney. If a hearing was requested, they

both knew that under the statute the hearing would have to be held before April 1.[1]

I believe much of the fault here lies with the statute. The legislature should not only set out the number of days a teacher may have to request a hearing after notice of proposed termination, but should also have set forth the number of days required for notice to the teacher of the date set for the hearing pursuant to her request for such a hearing.

I concur in reversal because there was no showing that the state guidelines required the two age groups to be taught by separate teachers or that relator could not teach both units.

OTIS, JUSTICE (concurring specially).
I concur in the opinion of Mr. Justice Yetka.

ROGOSHESKE, JUSTICE (concurring specially).
I concur in the opinion of Mr. Justice Yetka.

PETERSON, JUSTICE (concurring specially).
I concur in the opinion of Mr. Justice Yetka.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] The legislature by L. 1973, c. 128, amended Minn. St. 1971, § 125.12, subd. 4, which now casts a doubt on whether there is any longer an April 1 deadline for refusal to review a teacher's contract. Thus, there are several reasons why the legislature should consider clarifying this entire procedure.