# ROSE MARIE HARDY v. INDEPENDENT SCHOOL DISTRICT NO. 694.

223 N. W. 2d 124.

October 18, 1974—No. 43902.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly* and *Craig W. Gagnon,* for appellant.

*Naughtin & Mulvahill* and *David Naughtin,* for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Relator appeals from an order of the district court discharging a writ of certiorari issued by that court to review the action of respondent school district in terminating relator's position as a tenured teacher. Relator contends that the notice of termination was insufficient, a reasonable time and opportunity to remedy the complaint was not given to her, the notice of hearing was untimely and inadequate, and that she was not provided with a fair hearing. We reverse.

Of all the issues raised on behalf of relator, there are only two

worthy of serious consideration. The first one is whether or not relator was given, as required by Minn. St. 1971, § 125.12, subd. 6, a reasonable opportunity to remedy the complaint against her.

The second issue is whether or not relator was given a timely notice of the hearing as required by Minn. St. 125.12, subd. 9.

As to both issues, it is necessary to consider the facts and circumstances in this particular case. Relator has been certified to teach elementary education in Minnesota for 13 years and had been teaching in respondent school district for 7 years as a third grade teacher.

Apparently the termination effort in this case was precipitated by a letter dated January 11, 1972, from a parent of one of the students in relator's class which charged this teacher with a number of incidents that might be considered child abuse. All of these charges were denied by relator and apparently were groundless as they were not substantiated in any way and were abandoned at the hearing.

On February 22, 1972, relator received the first written criticism of her teaching during her seven years. In that correspondence, the superintendent of schools wrote in part:

"You are hereby notified that I am recommending to the School Board of this district that your contract to teach in this district should be terminated at the end of this school year. The main reason for this recommendation is your inability to maintain consistent discipline and appropriate rapport necessary in teaching children.

"* * * It is now one month from the date of issuing renewal contracts must take place. If no satisfactory and acceptable change takes place between now and then, you may expect to be officially informed by the School Board of contract termination."

About 2 weeks later, on March 9, 1972, the board notified her of the proposed termination of her contract, stating as its grounds:

"Inefficiency; inability to control students in an effective man-

ner and a resulting loss in rapport with students and parents to a point of educational impairment on the part of the students. Incidents and attitudes have been reported to the School Board which leads them to believe it would be impossible to condone this situation for another year."

On March 23, 1972, relator requested a hearing and was advised on March 27 that the hearing would commence on March 30. The hearing was held on March 30 and 31 and on the 31st the board issued its findings and order for termination on the grounds of inefficiency.

The school district had two third grade classes, the one taught by relator and the other by a Mrs. Lange. The achievement level of the pupils in relator's class was quite good and about the same as in the other third grade class.

Prior to the letter of January 11 of a parent claiming child abuse, there was nothing derogatory in relator's personnel file. While she had been told orally by the school principal before that time to keep better discipline in her classroom and in the school halls, apparently any lack of discipline was not serious enough to warrant a written reprimand or adverse comments in her personnel file. The school principal had been making periodic observations of relator's classroom over the prior six or seven years but had not recorded his observations until after the child-abuse letter of January 11 because he didn't think it was needed.

On January 13, the superintendent of schools visited relator's classroom several times and observed no fear or reluctance on the part of children in asking questions of the teacher or talking to her and he thought rapport was quite good.

Relator testified that she was advised by the superintendent of schools shortly after the child-abuse letter of January 11 that if she had any discipline problems to send them to the school principal, and the principal testified:

"A. Evidently I told her then, in discussion with her then, to not lay a hand on them, to bring them to me then, evidently.

"Q. When did you tell her not to lay a hand on the kids?

"A. Well, I don't know if I did; but I would assume, if she didn't—she didn't touch any from that time, then I would assume that I would have told her that she should bring them to me to handle it."

Prior to the foregoing instructions from the school authorities, relator had authority to spank children who were unruly. Because of these instructions, she felt that disciplinary responsibility had been taken out of her hands.

After the middle of January, relator had more and more discipline problems which she attributes to her lack of authority to immediately handle the situation. The problems were centered around four boys, three of whom had been in the school in the first and second grades. In fact, their first grade teacher recommended that all three not be assigned to the same second grade class because they were troublemakers and as a consequence one was placed in a different second grade class from the other two. However, all three were assigned to relator's class. One of the three, considered by relator to be the main factor in the discipline problems, was specifically assigned to her because of an incident in which he had put tar in the gasoline tank of Mrs. Lange's car.

In accordance with the instructions of the school authorities, relator continued to channel pupils to the principal's office for discipline. However, it is apparent that this system was not working as the discipline problems seemed to get worse.

Parents began to complain about various and sundry items. Some were obviously without merit. The superintendent's notes showed that he advised relator about the number of parents who were complaining and asked her if she could supply him with the names of parents who would support her.

From a careful reading of the transcript and record, it appears that prior to January 1972 and over a period of seven years, this teacher had had practically no problems with discipline and no other teaching problems of note. The child-abuse charges that

were leveled at her were never substantiated and in fact were abandoned by the school board.

From January 11, 1972, on there is little question but that she had many discipline problems in her class. It also seems clear that some parents were looking for something to complain about.

It was in this setting that relator claims that she was not given a "reasonable time within which to remedy" the complaints. A reasonable time has to in part depend upon the nature of the complaints and the opportunity given the teacher. The main complaint originally was child abuse. This was never substantiated, but it is the type of thing that could be stopped at once. The final main complaint was lack of discipline. As to this, relator claims she was told to send her discipline problems to the principal and that she did from that time on, but that the discipline problems grew worse. Relator claims that in effect she had no time to correct these problems because the opportunity and authority to do so had been taken away from her.

Decision with respect to the second issue, which goes to the timeliness of the notice of hearing, has to be based in part upon the nature of the complaints and the facts involved. If the nature or number of complaints are such that it is reasonably necessary to question and to subpoena many witnesses, it is obvious a reasonable notice of hearing would require more time than where there is only one specific incident involved and relatively few witnesses to call.

While under the decisions of this court the termination notice here was sufficient, its lack of specificity does give rise to a need for a broader investigation of facts and the interrogation of more witnesses to meet every possible complaint that might arise under its somewhat general terms. By way of example, here relator was charged with physically punishing her pupils in ways that could be considered child abuse, yet these charges were abandoned and the board found she was too lenient.

Considering the possible complaints that could have been advanced under this notice and the nature of the probable issues

and the time reasonably necessary to prepare a defense in this case, was the notice of hearing timely?

In the instant case, relator's attorney formally objected on the record to holding the hearing on 2 days' notice. It was pointed out that it was Easter week, some teachers were out of town, other witnesses which he intended to subpoena were out of town or unavailable. There was not even time to discuss the matter in detail with some of the persons contacted.

Hearings before administrative agencies require minimum standards of fair play. These standards of procedural due process apply to termination hearings before school boards. See, Morey v. School Board of Ind. School Dist. No. 492, 276 Minn. 48, 50, 148 N. W. 2d 370, 371 (1967). A basic function of such a hearing is to permit a teacher to make an adequate record upon' which to test the board's findings of statutory cause for termination. Cf. Wegner v. Independent School Dist. No. 286, 301 Minn. 354, 222 N. W. 2d 352 (1974). This requires, of course, a reasonable time to prepare for hearing. We think, given the facts and circumstances in this case, that fair play should require that a teacher be given more than 2 days' notice in which to investigate and otherwise prepare for hearing, including subpoenaing of witnesses.

The effect of this short notice was that there were five persons who could not even be reached for interview and one witness who was interviewed couldn't be found to be subpoenaed. In addition, six witnesses disregarded duly served subpoenas. The hearing commenced on the evening of March 30 and was continued on March 31. The relator complains that the statutory requirement that the board's action take place before April 1 (Minn. St. 1971, § 125.12, subd. 4) made it impossible to seek enforcement of the subpoenas since the board intended to, and did, meet that deadline by making its findings and order for termination on the last day of the hearing.

This court in Fisher v. Independent School Dist. No. 118, 298 Minn. 238, 215 N. W. 2d 65 (1974), had before it this same issue

of the timeliness of the notice of hearing. We held in that case that the notice was not timely. In Fisher the notice was shorter in that it was given on March 29 with the hearing to begin at 4 p. m. on the 30th. However, it is obvious from a comparison of the facts and issues in Fisher with those in this case that the instant case required a more extensive investigation and preparation for a complete and fair hearing.

The board in the present case argues that relator had some obligation to file her request for hearing sooner than the 14 days allowed by statute. In Fisher, we held that the April 1 deadline fell upon the school board and not upon the teacher. In Fisher, we said (298 Minn. 244, 215 N. W. 2d 69):

"* * * It is the board which has set in motion the procedures of termination. The board is charged with notice of the statutory prerequisites and must fairly anticipate that the teacher will exercise her right to use time given her to determine whether or not she should request a hearing. It was the obligation of the school board to plan its action in such a way as to permit accomplishment of all the prerequisites before the deadline imposed by the statute before its amendment in 1973."

In Fisher, a specially concurring opinion of Mr. Justice Yetka pointed out that much of the fault lies with the statute in that:

"* * * The legislature should not only set out the number of days a teacher may have to request a hearing after notice of proposed termination, but should also have set forth the number of days required for notice to the teacher of the date set for the hearing pursuant to her request for such a hearing." 298 Minn. 246, 215 N. W. 2d 70.

In addition, that concurring opinion suggested that the notice of termination could have contained a clause providing that if a hearing were requested, it would be held on March 30. A similar clause could have been inserted in the notice of termination

in the present case, preferably for an earlier date than the 30th to permit the enforcement of subpoenas if necessary.[1]

It is not necessary to decide whether relator had a reasonable time within which to correct the complaints against her because a decision on the second issue is dispositive of the case. However, some discussion of the facts on the first issue seemed appropriate. The board was not unanimous in its decision as one member dissented. Thus the failure to give a timely notice is of greater significance where the result conceivably might have been different with adequate investigation and a reasonable opportunity to subpoena witnesses and require their attendance.

The order of the trial court is reversed with instructions to order respondent to reinstate relator as a tenured teacher.

---

[1] It was pointed out in note 1 of the specially concurring opinion in Fisher v. Independent School Dist. No. 118, 298 Minn. 238, 246, 215 N. W. 2d 65, 70 (1974): "The legislature by L. 1973, c. 128, amended Minn. St. 1971, § 125.12, subd. 4, which now casts a doubt on whether there is any longer an April 1 deadline for refusal to [renew] a teacher's contract. Thus, there are several reasons why the legislature should consider clarifying this entire procedure."