**Joy GANYO, petitioner, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 832, Respondent.**

**No. 51122.**

Supreme Court of Minnesota.

Oct. 30, 1981.

Victor B. Anderson, St. Paul, for appellant.

Peterson, Popovich, Knutson & Flynn, St. Paul, for respondent.

WAHL, Justice.

Petitioner Joy Ganyo appeals from an order of the district court which left standing the action of respondent school district terminating her position as a tenured teacher. Petitioner contends that the charges leading to the termination of her teaching contract were not supported by substantial evidence on the entire record and that a reasonable time, as required by Minn.Stat. § 125.12, subd. 6 (1980),[1] was not allowed to

remedy any administratively defined deficiencies in her teaching. We reverse.

Ganyo was a teacher of oral communications and English literature in the 1978–79 school year at Mahtomedi Senior High School, Independent School District No. 832. She had taught since 1961 in the same district and had 8 years of teaching experience before coming to Mahtomedi. In the 1978–79 school year, her teaching performance was evaluated by Myrl Moran, the assistant principal in her building, and Kay Jacobs, the assistant superintendent of the school district. Beginning after two incidents which Moran characterized as showing ineffective communications with parents of students, Ganyo was formally observed in her classroom, twice by Moran and once by Jacobs. Those observations resulted in a notice of deficiency given to Ganyo on January 2, 1979, pursuant to the requirements of section 125.12, subd. 6. Moran told Ganyo that the improvement would be expected by February 1, 1979, when a second round of formal observations would begin.

The notice, listing eight areas of deficiency, read as follows:

1. *Lack of Clear Directions to Students.* Verbal directions should be given slowly and clearly. Long and complex directions are to be avoided. Written directions, whether on the blackboard or on paper should be clear, neat, concise and grammatically correct. You should make sure each direction has been understood before proceeding with the lesson.

2. *Poor Classroom Control.* The value of student demonstrations and your comments upon them are often lost to the rest of the class because of general inattention. It is your responsibility to as-

---

1. The full text of Minn.Stat. § 125.12, subd. 6 (1980) reads:

Subd. 6. Grounds for termination. A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

(a) Inefficiency;

(b) Neglect of duty or persistent violation of school laws, rules, regulations, or directives;

(c) Conduct unbecoming a teacher which materially impairs his educational effectiveness;

(d) Other good and sufficient grounds rendering the teacher unfit to perform his duties.

A contract shall not be terminated upon one of the grounds specified in clauses (a), (b), (c), or (d), unless the teacher shall have failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them.

sure that students pay attention and not talk while you are instructing. Put in another way, you must not allow students who are not participating in an exercise to disrupt the classroom.

3. *Listening.* You must be more aware of and responsive to questions of students. This is particularly true in regard to directions and instructions.

4. *Inappropriate Record Keeping.* Program changes are to be promptly recorded. Student absences and late arrivals are also to be promptly recorded. Absences are to be changed to "tardy" if a student who has been marked absent arrives late.

5. *Ineffective Parent Communications.* Parent phone calls are to be promptly returned. When you deal with parents you are to assume a cooperative and non-argumentative manner. You must be more receptive to criticism. Humility in dealing with parents is often rewarded with cooperation on their part.

6. *Instructional Criteria and Student Evaluations.* You are to employ clear and objective criteria in evaluating student performances. Subjective, vague and inconsistent criteria or criteria poorly communicated deprive students of a clear understanding of your expectations. State clearly the purpose of each exercise and summarize it upon its conclusion. Avoid discussions with individual students during class and in front of the class which are not of value or interest to the entire class.

7. *Discussion of Personal Matters.* You are not to discuss with students or question them as to their personal or family life before the class. In private conversation with students you are to be sensitive to the fact that they are easily embarrassed by the discussion of private and family matters, and you are to avoid pursuing discussions of embarrassing matters.

8. *Relations with Staff and Supervisors.* You must assume a cooperative attitude in working with the administration. Your resistance to legitimate direction and criticism reflects poorly upon your professional qualifications.

Ganyo was twice observed in her classroom in early February 1979 by Moran. No other observer sat in on her classes. On February 26, 1979, the school board passed a resolution, delivered to Ganyo on February 27, proposing to terminate Ganyo from employment. The reasons given were classified as "[i]nefficiency, neglect of duty, persistent violation of school rules, regulations and directives, and other good and sufficient grounds rendering you unfit to perform your duties." The eight areas listed in the notice of deficiency, now framed specifically as statutory grounds for termination, were recited in substance. Ganyo requested and was accorded a public hearing on her termination pursuant to her rights under section 125.12, subd. 9. The hearing was conducted by the school board on March 30 and 31, 1979.[2] If the termination were to be effective at the end of the 1978–79 school year, section 125.12, subd. 4, required a majority roll call vote of the full membership of the board prior to April 1, 1979. At 11:55 p. m. on March 31, 1979, the school board took a roll call vote following a hurried 45-minute deliberation and passed a motion to terminate Ganyo at the end of the school year. The findings of fact recited the deficiencies as listed in the notice of proposed termination, except that the

2. We have questioned the fairness of termination proceedings under our current statute, which permits local school boards to exercise the three-part role of prosecutor, judge and jury. *Kroll v. Independent School Dist. No. 593*, 304 N.W.2d 338, 345 (Minn.1980); *Liffrig v. Independent School Dist. No. 442*, 292 N.W.2d 726, 730 (Minn.1980). In *Kroll*, decided after the hearing in petitioner's case was conducted, we emphasized that, absent unusual or extenuating circumstances, a hearing examiner should be hired in all cases. 304 N.W.2d at 345 n. 3. We suggest that the hearing examiner not be limited to taking evidence but, by analogy to the Administrative Procedure Act, Minn.Stat. § 15.052, subd. 3 (1980), also make detailed findings and conclusions which would then be available to the school board in reaching its decision on termination. We might add that our review of the record discloses that the school board here, even though under severe time restraints and presented with numerous evidentiary problems, conducted the hearing in a conscientious and fair manner.

charge of inadequate record-keeping was stricken. The board also found as fact that Ganyo had reasonable opportunity to correct the deficiencies set forth in the January 2, 1979 notice. No other findings going to Ganyo's neglect of duty or inefficiency were made except insofar as the board found that the seven items from the notice of termination constituted neglect of duty or inefficiency.

Ganyo petitioned the Washington County District Court for a writ of certiorari to review the termination decision of the school board. The writ was granted and, upon review, was discharged by the court in an order affirming the actions of the school board.

■■■ We will not set aside a school board's decision to terminate a teacher unless that decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction or is based on an erroneous theory of law. *Liffrig*, 292 N.W.2d 726; *State ex rel. Lucas v. Board of Education & Independent School District No. 99*, 277 N.W.2d 524 (Minn.1979). We do not hear the case *de novo* or substitute our findings for those of the board.[3] *Kroll*, 304 N.W.2d 338. We view the entire record to determine whether the board's findings are supported by substantial evidence, since, as we said in *Liffrig*, "evidence which might be conclusive if unexplained may lose all probative force when supplemented and explained by other testimony." 292 N.W.2d at 729. We cannot here, as we could not in *Liffrig*, uphold a decision merely on the basis of evidence "which in and of itself justifies it without taking into account con-

tradictory evidence or evidence from which conflicting inferences can be drawn. *Id.* (Citation omitted.)

■■ The record as a whole contains little probative evidence to substantiate that each of the alleged deficiencies existed or was not cured. Assistant Principal Moran was Ganyo's immediate supervisor and, as such, made the initial observations of Ganyo's teaching, supplemented only by the 1-hour observation conducted by Jacobs. Moran was the only observer of Ganyo after the notice of deficiency. While it is not a statutory duty of school administrators to have more than one person conducting the evaluations, the severity of termination for a tenured teacher suggests that such a course would be wise. Moran's testimony stands alone to substantiate that little or no improvement was made on the alleged deficiencies. Ganyo testified that she had been working on the oral and written communications area (Charge 1) and the listening and responding to student questions area (Charge 3). Moran testified that she saw improvement in the oral and written communications area (Charge 1) and in the classroom control area (Charge 2). That Moran did not see any instance of a failure to employ objective grading criteria (Charge 6) could be deemed to be a correction of that alleged deficiency. *Lucas*, 277 N.W.2d at 524. The school board dismissed the inadequate record-keeping allegation (Charge 4). The ineffective communications with parents (Charge 5) and the discussion of personal matters in class (Charge 7) are alleged deficiencies which are not supported by substantial evidence on the record as a whole. It appears from the record that what the classroom discussions

---

**3.** The findings of the board must be written findings which not only set out the specific charge or charges upon which the school board based its decision but also those basic facts developed in the evidence which in the board's judgment support the charge or charges. *Morey v. School Bd. of Independent School Dist. No. 492*, 268 Minn. 110, 115–16, 128 N.W.2d 302, 307 (1964). The mere restatement of the alleged deficiencies as findings of fact, as in this case, is insufficient to satisfy the requirement that findings of fact be made with particularity that substantiates the alleged deficiencies. *See Morey v. School Bd. of Independent*

*School Dist. No. 492*, 271 Minn. 445, 447, 136 N.W.2d 105, 106 (1965). *Compare State ex rel. Lucas v. Bd. of Education & Independent School Dist. No. 99*, 277 N.W.2d 524, 526 (Minn.1979), where the notice of proposed termination listed 58 separate grounds for termination after the notice of deficiency listed four general areas as problems. The *Lucas* school board's findings of fact after the termination hearing number 84, with 67 of these findings addressing specific instances of job neglect, inefficiency and violation of school board directives. *Id.* at 526–27.

covered was, in part, a matter of curriculum development and textbook choice chargeable to the English Department as a whole and the administrator responsible for the curriculum writing and, in part, within the professional discretion of the teacher. Oral communications was considered important enough by the school district to be a requirement for graduation. It is a sensitive area which legitimately includes the critique of oral presentations, some of which may involve personal experience. Ganyo specifically instructed her students that they need not discuss any matter which was personally embarrassing to them. Only two incidents involving parental communication following the notice of deficiency were before the board. In one instance, a parent called Moran requesting make-up work for a student in Ganyo's class. Ganyo sent the make-up work but, in her professional judgment, did not consider a call to the parent necessary. In the second incident, Ganyo called a parent on her own initiative to see if a student was evidencing any problems at home. The parent testified that he considered this to be effective communication. As for alleged resistance to criticism and supervision from the administration (Charge 8), the record indicates that the English Department as a whole had a problem in dealing with one administrator, and that Ganyo, as a long-term tenured teacher reacted in an understandably defensive manner to a deficiency notice which she neither understood nor felt was warranted. The record indicates that Ganyo was making efforts to improve her teaching; she had improved in several areas by her own testimony and by that of students and her supervisor, Moran.

■ The school board also found that Ganyo had a reasonable time in which to remedy the deficiencies charged. The record provides no basis for that finding. The deficiency notice was sent on January 2, 1979, and Moran explained it to Ganyo shortly thereafter. Moran informed Ganyo that she believed she should see improvement by February 1, 1979 (30 days later). The first post-notice observation was held on February 7, 1979 (36 days later). No further observation was made until March 28, 1979, 2 days before the termination hearing. Superintendent Carl Wahlstrom testified that he said at a meeting on January 23, 1979, (21 days after notice) that he viewed termination only as a last-resort measure and did not have it in mind at that time. Alden McCutchan, an experienced administrator and teacher, testified that he was told in a meeting of Moran, Jacobs, Ganyo and her representatives on February 2, 1979, (31 days after the deficiency notice) that neither Moran nor Jacobs had termination in mind as the end result of the deficiency notice. Wahlstrom testified that he determined in his own mind on February 21 and 22 (50 and 51 days after notice) that Ganyo should be terminated. The recommendation to terminate was made to the school board and the proposed termination was adopted on February 26, 1979, (55 days after notice). In essence, Ganyo had 5 weeks to cure the deficiencies before the first observation. Even if we deem the relevant time for correcting deficiencies to be that between the notice of deficiency and the notice of proposed termination, the total time available to Ganyo was 8 weeks. Is this a "reasonable time within which to remedy" the alleged deficiencies under section 125.12, subd. 6? There is a paucity of cases in our jurisdiction construing "reasonable time" to remedy deficiencies under subd. 6. In *Lucas*, we held that the 182 days between the September 3, 1976, notice of deficiency and the March 5, 1977, notice of proposed termination was a reasonably sufficient time. 277 N.W.2d at 526. In *Hardy v. Independent School District No. 694*, 301 Minn. 373, 223 N.W.2d 124 (1974), where a parental letter of January 11, 1972, triggered what could be considered a notice of deficiency on February 22, 1972, and a school board notice of a proposed termination on March 8, 1972, (17 days later) we said that "[a] reasonable time has to in part depend upon the nature of the complaints and the opportunity given the teacher." 301 Minn. at 277, 223 N.W.2d at 127.

In *Kroll*, 304 Minn. at 345, we observed that "[i]f the purpose of the tenure statute is to avoid discharge of teachers who have demonstrated their fitness over the years then refusal to consider evidence of this

fitness would negate the advantage of tenure." Further, we held that section 125.12, subd. 6, is the appropriate termination statute to use when remediability of the underlying problem is a possibility. *Id.* In the case before us, correction of the deficiencies charged was a possibility. The physical health and welfare of Ganyo's students was never in question. Allegations of possible psychological harm in the record were speculative. The teacher, by statute, must be given a reasonable time in which to correct the deficiencies outlined. Considering this teacher's 17 years of service in the district, in addition to 8 years of teaching elsewhere, it seems harsh and unreasonable to accord her only 5 weeks after the notice of deficiency before the first observation and 8 weeks before the notice of termination to remedy 25 years of teaching practice which was now labeled deficient for the first time. Such a limited time under the facts and circumstances of this case is unreasonable as a matter of law.

We reverse and order respondent school district to reinstate petitioner with compensation as provided by Minn.Stat. § 125.12, subd. 11 (1980).

Reversed.