Myron O. **OSTLUND**, Petitioner,
Appellant,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 47, SAUK RAPIDS, Minnesota, Respondent.**

No. C2–83–1763.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Roger J. Aronson, Minneapolis, for appellant.

Vicki E. Landwehr, Hoolihan & Neils, St. Cloud, for respondent.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Donald W. Selzer, Jr., St. Paul, amicus curiae, for Minnesota Education Ass'n.

Heard, considered and decided by POPO-VICH, C.J., and HUSPENI and NIEREN-GARTEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from the district court's order denying appellant Ostlund's petition for writ of certiorari. Appellant Ostlund was the principal at a senior high in Sauk Rapids. In May of 1979, he took an unpaid administrative leave which was approved by the Sauk Rapids School District. After Ostlund informed the District of his intent to return to work, the School Board sent him notice of intent to terminate his contract. The School Board adopted the findings of the independent hearing examiner and ordered Ostlund's contract terminated. Appellant's petition for writ of certiorari was denied by the district court on September 28, 1983. This appeal followed.

Affirmed.

## FACTS

The parties filed the following agreed statement of the record pursuant to Rule 110.04 of the Minnesota Rules of Civil Appellate Procedure:

> The Appellant, Myron O. Ostlund (hereinafter "Ostlund"), was a tenured principal employed by the Respondent school district (hereinafter "district"). Ostlund commenced his employment with the district in 1967. In May of 1979, Ostlund took an approved administrative leave from the district. While on said leave and after notice of Ostlund's intention to return from said leave, the district commenced proceedings to terminate Ostlund's continuing contract with the district pursuant to Minnesota Statute 125.12.
>
> Ostlund was served with a Notice of Termination, and after a hearing on the termination, an Order of Termination was served upon Ostlund.
>
> On June 20, 1983, in District Court, Benton County, the Appellant petitioned for certiorari to review the findings of the hearing officer. The District Court denied Appellant's request in its Order and Memorandum dated September 28, 1983.

## ADDITIONAL FACTS

The job description for a Sauk Rapids senior high school principal includes the following duties and responsibilities:

A. General Administration:

\* \* \* \* \* \*

16. He shall make reports as needed and required by the superintendent.

B. Curriculum:

\* \* \* \* \* \*

4. He shall observe the work of teachers in classrooms and serve as a consultant for improving and revising the curriculum.

\* \* \* \* \* \*

C. Staff Personnel:

\* \* \* \* \* \*

3. He shall supervise classroom instruction as a cooperative process.

\* \* \* \* \* \*

10. He shall maintain a file of factual records of personnel.

William Kaschmitter, a school board member from 1971–1979, testified the Board began requiring formal teacher evaluations in 1973. Although he was unsure when this directive went into effect, he said Superintendent Fure was directed to carry on with the directive that principals do written evaluations of their teachers. Superintendent Fure admitted no written directive regarding the written teacher evaluations requirement was circulated to principals. To the best of his knowledge, however, he had informed all principals of the policy, including the recommended and expected number of evaluations.

Appellant testified a written evaluation procedure existed during his first few years with the District. A subsequent change, however, left no good, concise, clear evaluation policy. Douglas Moilanen, a teacher and administrative aide, testified a teacher evaluation procedure existed through the 1974–1975 school year. He stated the formal teacher evaluation requirement was removed from the 1975 teachers' master agreement.

Three other Sauk Rapids principals testified. John Clark has been a junior high principal in the District for 15 years. His understanding was teacher evaluations were required in the 1977–1978 school year. He does not recall any administrative meeting regarding a teacher evaluation requirement but guesses there probably was one. Superintendent Fure did talk with him individually about the requirement. To the best of Clark's knowledge though, there was no structured evaluation process during the 1978–1979 school year.

Jerry Leese has been an elementary principal with the District for 13 years. He did both formal and informal teacher evaluations during the 1977–1978 school year. He did the evaluations by his own volition and because he understood it was part of his job. He was not so sure they were a requirement; he thought it was just something done in the elementary schools. He stated formal evaluations became official board policy in 1979.

Edward Ribich is elementary principal at Pleasantview Elementary in Sauk Rapids. He has been with the District for 14 years. He did written evaluations of teachers and filed them with each teacher's personnel file.

An excerpt from the School Board meeting minutes for July, 1976, contains the following statement attributable to Superintendent Fure:

VIII. REPORTS:

A. Some time ago an indication was given of a desire to know something about the evaluation of teachers taking place in this district. Reports from all the principals except Mr. Ostlund are reproduced for your information. Myron is on vacation and I hadn't realized that his report had not been made. These reports should serve to give you some insight into our current practice. I believe that reporting of evaluations of any individual teacher would be improper in a public meeting. Any questions in that regard should be directed to the principal in charge.

Appellant did not submit an evaluation summary upon return from his vacation.

In the spring of 1977, the District sought to place teacher Rodney Mell on unrequested leave of absence. Mell was an industrial arts teacher at the senior high. During the process of discharging Mell, a request was made for his personnel file. Fure testified appellant produced Mell's file but not Mell's evaluations. Mell was in his third year at the time and according to Fure, there should have been at least five evaluation forms in Mell's file. Fure reports appellant's unacceptable explanation was the evaluations must have been at home. Appellant did not recall saying the evaluations were at home, but rather claimed the entire Mell file disappeared from his desk drawer. No evaluations of Mell's performance were ever produced.

On August 15, 1977, Fure dictated a letter addressed to appellant. The letter criticized appellant for his apparent low level of staff supervision and the complete absence of supervision records for Rodney Mell. The letter goes on to state:

> Until further notice I will expect to receive a copy of each formal evaluation you make. I reviewed this whole matter with you on July 18 but I am writing this and placing a copy in your records to make sure there is no misunderstanding about this matter. I have expressed in the past my dissatisfaction with your communication. It now appears plain to me that that lack and your failure to provide adequate supervision, or record of it, created a serious problem.

Fure did not receive any reports in response to the July 18 conversation or this written communique. Appellant, however, maintains he never received the August 15, 1977 letter. He does not recall the July 18, 1977 meeting referenced in the letter either.

On October 19, 1978, Fure dictated another letter addressed to appellant. The title of the communique was "Letter of Deficiency". The text of the letter reads as follows:

> This will notify you that you have proven deficient in the matter of supervision of your staff.
>
> After the Rodney Mell case in which you could produce no record of observations, you were asked last year to send me copies of all observations. I received none.
>
> This year I asked for a monthly report. I have not received that.
>
> You are hereby informed that you must comply or I will recommend either dismissal or a change in your duties in this district.
>
> You should also review your annual evaluation from me. I suggested at that time we could discuss your performance with Dave Meade. I still think that might be a good idea.

Joan Nelson, Superintendent Fure's secretary, recalls typing the October 19 letter of deficiency and to the best of her knowledge she followed normal procedure in delivery of the letter by depositing it in the inter-office mailbox marked with appellant's name.

Appellant maintains he never received the October 19 letter of deficiency. Appellant filed his one and only report of teacher evaluations conducted on October 26, 1978. His explanation for this one report was he once saw a letter from Fure that evidently asked if he was doing his observations.

The annual evaluations referred to in the October 19 letter of deficiency are the evaluations of appellant by Fure. In the 1975–1976 evaluation, Fure gave appellant a 3 or excellent rating for teacher evaluations. The comments with the rating stated: "Hard to judge—haven't seen much." In the 1976–1977 evaluation, appellant's teacher evaluation rating dropped to 2 or good. No comments were added. In the 1977–1978 evaluation, appellant received a 1 or fair to poor rating for his teacher evaluations. The comments state: "You have completely ignored my request of last August, or did you make no classroom visitations this year?" Additional general comments state:

I am finding it increasingly difficult to work with you. I [sic] should be apparent that my confidence in you is not high. Yet you choose to ignore direct requests to do things like supervise teachers and report on those classroom visitations. How long before we have another Mell case? * * * Unless you change, you are going to have serious trouble sooner or later. Should we call Dave Meade and have him evaluate your situation? This is the last year that I can tolerate your inadequacies.

Appellant acknowledged receipt of his evaluations by Fure, but he was not sure he had reviewed the ratings with him.

In January of 1979, Superintendent Fure says he met with appellant and asked appellant what he should tell the Board about appellant's failure to comply with the deficiency notice. Appellant reportedly said: "You don't have to tell them anything. I will tell them myself. At the end of the year I'll be leaving." Fure decided not to go ahead with a dismissal recommendation after appellant made this statement.

Appellant not only denies making this statement but also denies the January meeting's occurrence. He maintained he did not decide to take a leave of absence until May 29, 1979.

Appellant submitted his request for an unpaid administrative leave at the last Board meeting in May, 1979. The request was approved. Being on unrequested leave allowed appellant to continue to pay into teacher retirement and retain an employee-employer relationship with the District.

Before appellant left in June, he said he put all the teacher evaluation forms he had completed in a large envelope and labeled it. He handed the envelope to Superintendent Fure who reportedly said he no longer needed them. Appellant left the envelope on his desk for his successor.

In January 1983, appellant sent the Board a letter stating his intent to return to work for the 1983–1984 school year. The Board responded with a notice of intent to terminate his contract at the conclusion of the 1982–1983 school year pursuant to Minn.Stat. § 125.12, subd. 6 (1982). Appellant requested and received a hearing before an independent hearing examiner. A unanimous School Board voted to adopt the hearing examiner's findings and terminate appellant's contract. Appellant's petition for writ of certiorari was denied by the district court of Benton County on September 28, 1983.

## ISSUES

1. Whether the findings concerning service of the notice of deficiency are supported by substantial evidence in the record.

2. Whether the hearing examiner's reliance on incompetent evidence was impermissible.

3. Whether the School District's delay in commencement of termination proceedings was arbitrary or capricious.

## ANALYSIS

### STANDARD OF REVIEW

■ 1. In *Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 342 (Minn.1981) the Minnesota Supreme Court said:

Our limited scope of review in teacher terminations under Minn.Stat. § 125.12 (1982) is well settled. On appeal to this court, a school board's decision to terminate a teacher will be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law. *Whaley v. Anoka-Hennepin Indep. School Dist. No. 11*, 325 N.W.2d 128, 130 (Minn.1982) (citing *Ganyo v. Independent School Dist. No. 832*, 311 N.W.2d 497, 500 (Minn.1981)).

*State ex rel. Dreyer v. Board of Education of Independent School District No. 542, Battle Lake*, 344 N.W.2d 411, 413 (Minn.1984). *See also Laird v. Indepen-*

dent School District No. 317, Deer River, 346 N.W.2d 153, 156 (Minn.1984) (absent a determination that the school board acted arbitrarily, capriciously or unreasonably, this court cannot interfere with the school board's decision as to the existence of statutory grounds for discharge, provided the board acted in good faith and on a correct interpretation of the law).

Schmidt v. Independent School District No. 1, Aitkin, Minnesota, 349 N.W.2d 563, 565–66 (Minn.Ct.App.1984).

Minn.Stat. § 125.12, subd. 6 (1982) provides:

> A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:
>
> \*       \*       \*       \*       \*       \*
>
> (b) Neglect of duty, or persistent violation of school laws, rules, regulations, or directives;
>
> \*       \*       \*       \*       \*       \*
>
> A contract shall not be terminated upon one of the grounds specified in clauses (a), (b), (c), or (d), unless the teacher shall have failed to correct the deficiency *after being given written notice of the specific items of complaint and reasonable time within which to remedy them.*

*Id.* (emphasis added).

**(a)** *The October 19, 1978 letter of deficiency.*

■  Minn.Stat. § 125.12, subd. 6 specifically requires the teacher be *given* written notice of the specific items of complaint. Superintendent Fure dictated the letter and addressed it to appellant. Joan Nelson, Fure's secretary, testified she specifically placed the deficiency letter in appellant's mailbox. Appellant states unequivocally he did not receive the letter, but he did submit his first and only evaluation report exactly one week after the deficiency notice was delivered. This is sufficient evidence to support the Board's finding that appellant received the notice of deficiency.

**(b)** *Whether the annual evaluations of appellant were notice of specific items of deficiency.*

■  Appellant received annual written evaluations from Superintendent Fure. A consistent decline in appellant's teacher evaluation rating is recorded on the 1976 through 1978 evaluations. In the 1977–1978 evaluation, appellant's teacher evaluation rating was fair to poor, a rating of 1 on a 1 to 4 scale. The comment on the evaluation asked whether appellant had completely ignored Fure's request for teacher evaluation reports. The comments further stated this was the last year appellant's inadequacies could be tolerated.

Appellant maintains an administrative appraisal cannot constitute a deficiency notice, even if it includes negative comments. We disagree. In light of the foregoing discussion, however, we need not decide whether these evaluations constitute sufficient notice. *See generally State ex rel. Lucas v. Board of Education & Independent School District No. 99*, 277 N.W.2d 524, 527–28 (Minn.1979); *Ganyo v. Independent School District No. 832*, 311 N.W.2d 497, 499 (Minn.1981).

2. Minn.Stat. § 125.12, subd. 9 (1982) provides in part:

> Any hearing held pursuant to this section shall be held upon appropriate and timely notice to the teacher, and any hearing held pursuant to subdivision 6 or 8 shall be private or public at the discretion of the teacher.   \* \* \*   Dismissal of the teacher shall be based upon substantial and competent evidence in the record.

*Id.* Appellant maintains it was error to admit District exhibits 15, 16 and 17, appellant's annual evaluations by Fure, because they were neither the original evaluations nor photocopies of the originals. The exhibits were typed by Joan Nelson from the original evaluations. The originals were present at the hearing and appellant was aware of their presence. He neither sought to introduce the originals nor challenge their authenticity. Appellant maintains these exhibits were not the best evidence. He further claims that had the

originals been introduced he would have challenged their authenticity. The hearing examiner, and hence the Board, admitted and relied on the exhibits.

Addressing this issue, the Minnesota Supreme Court has said:

> when conducting its hearing, a school board does not have to observe the rules of evidence. *See State ex rel. Lucas v. Board of Education & Independent School District No. 99*, 277 N.W.2d 524, 528 (Minn.1979). However, considering the seriousness of teacher termination, limits upon the type of testimony that may be considered are essential. The evidentiary prerequisites in hearings of this nature were succinctly summarized in *Morey v. School Board of Independent School District No. 492*, 271 Minn. 445, 136 N.W.2d 105 (1965):

> It is true that an administrative body acting quasi-judicially is not bound by strict procedural rules which circumscribe the action of a court, and that incompetent evidence is not fatal to its determination. Nevertheless, when a teacher's job is at stake, a just concern for fair play would require that the evidence which is calculated to support the charges should be relevant and have probative value. The board should not have to find support for its determination in hearsay or to make deductions from opinions and views relating to technical or theoretical principles. If there is substance to the charge that the teacher's conduct and want of competence require her dismissal, there ought to be substantial evidence of it * * *.

*Id.* at 448–49, 136 N.W.2d at 107–08 (footnote omitted).

*Kroll*, 304 N.W.2d at 342.

The evaluations are clearly probative of the questions at issue. They reveal a consistent decline in appellant's teacher evaluation rating over his last three years with the District. The comments on the evaluations shed additional light on a pattern of requests and responses. Since Minn.Stat. § 125.12, subd. 6(b) requires "persistent vi-olation of school laws, rules, regulations, or directives," the evaluations are also relevant. Reliance on these exhibits was therefore permissible.

3. Appellant testified he left an envelope marked teacher evaluations on his desk when he took leave. The envelope, however, could not be found after the termination proceeding had been commenced. Appellant claims the lost evaluations are crucial to his case and the District's failure to commence termination proceedings while the evaluations were available prejudiced him.

The significance of appellant's argument is difficult to grasp. Even if the envelope and its evaluations had been produced, the basis of appellant's termination was his persistent refusal to make reports and submit copies of his teacher evaluations during prior years. These grounds existed before appellant took his leave.

4. Superintendent Fure testified he would have recommended appellant's dismissal in 1979 but for appellant's plan to take leave. Fure stated that based on appellant's communicated intent to take leave, he did not believe it was in appellant's or the District's best interest to initiate termination proceedings then. Appellant's decision to take a voluntary, unpaid leave of absence relieved the District of any duty to commence termination proceedings. It was also possible that appellant could have decided not to return at the end of the five year period; but having decided to return, the School Board could then commence its action. It was neither arbitrary nor capricious for the School Board to fail to commence termination proceedings immediately prior to or during the unpaid leave.

## DECISION

The record supports the School Board's determination that appellant received written notice of deficiency and failed to make corrective action. The evidence utilized to support this determination was relevant and sufficiently probative to be admitted

and relied upon by the Board. Delay in commencing the termination proceeding during appellant's voluntary, unpaid leave of absence was neither arbitrary nor capricious.

Affirmed.