Theodore R. **FISHER**, Relator,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 622, NORTH ST. PAUL/MAPLEWOOD, Minnesota, Respondent.**

No. C4–84–690.

Court of Appeals of Minnesota.

Nov. 6, 1984.

Thomas E. Moore, St. Paul, for relator.

Paul C. Ratwik, Susan J. Schoell, Peterson, Knutson, Flynn & Hetland, St. Paul, for respondent.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Petitioner was discharged from employment as a teacher and principal after a hearing conducted by an independent hearing examiner on charges that he had sexually molested a male student during the years 1967 to 1971. The hearing examiner recommended immediate discharge, and the board followed the recommendation. The matter is here on a writ of certiorari to review the board's action. We affirm.

## FACTS

Theodore Fisher is a continuing-contract teacher and principal with respondent school district, where he had been employed for 22 years at the time of the hearing. He is certified as an elementary school teacher and principal and was serving as the principal of Webster Elementary School at the time of the alleged incidents of sexual abuse from 1967 to 1971.

Robbi Jon Olson was in the second grade at Webster in 1967, when, he claims, a

pattern began in which he was called down to the principal's office once or twice a month for visits that included sexual contact with the principal. These visits continued during Olson's second, third, fourth, and the first half of his fifth grade years, when Olson's family moved from the district.

Olson's was the only testimony establishing that these visits occurred. Olson was able to draw a diagram of the layout of the principal's office and adjoining general office, which both Fisher and his secretary admitted was essentially accurate.

At the hearing differences between the parties centered on two primary fact issues: (1) whether the privacy required was physically possible, and (2) whether the frequency of visits was possible without drawing the attention of others. Fisher presented considerable testimony on the layout of the office, its windows, and the surrounding traffic; however, he was unable to show that the private visits were impossible. The evidence established that privacy could be obtained by closing one door and lowering the window shades.

Olson's fourth and fifth grade teachers, as well as Fisher's secretary, testified that they did not recall any visits of the frequency claimed by Olson. The fourth grade teacher and the secretary stated they would have recalled visits of the frequency alleged. The fifth grade teacher stated he probably would not. The secretary acknowledged that she did not interrupt Fisher when his door was closed. The witnesses generally admitted that recall was difficult since the last incidents occurred in 1971.

In 1983 Olson mentioned the incidents to a counselor in the course of a counseling session for another member of his family. The counselor referred him to an officer of the local police department. Olson had earlier mentioned the incidents only to his brother. Olson, who was 23 years old at the time of the hearing, is now the father of three children. He stated he was motivated by concern for his own children and those of others.

Olson met with the superintendent of the school district on September 27, 1983, and presented him with a copy of his written statement to the police. After an investigation and a decision that there was sufficient evidence to seek immediate dismissal, the superintendent called Fisher in early December and told him the nature of the charges and asked him to meet with him the following week, accompanied by legal counsel.

At this meeting, on December 12, 1983, the superintendent showed Fisher a resolution of immediate dismissal prepared for Board approval. The following day, Fisher contacted the superintendent and offered to submit his resignation without admitting his guilt. The superintendent agreed to present the resignation to the board and recommend acceptance. At the meeting of December 15, 1983, the School Board voted unanimously to reject the tendered resignation and adopted the resolution approving immediate discharge pursuant to Minn. Stat. § 125.12, subd. 8 (1982).

## ISSUES

1. Was the board's dismissal of Fisher for immoral conduct and conduct unbecoming a teacher supported by substantial evidence?

2. Did the remoteness of the charges against Fisher result in a denial of due process?

## ANALYSIS

### I

The scope of review of teacher terminations is limited. A school board's decision to terminate a teacher will be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law. *Schmidt v. Independent School Dist. No. 1*, 349 N.W.2d 563, 566 (Minn.Ct.App.1984) (citing *Ganyo v. Independent School Dist. No. 832*, 311 N.W.2d 497, 500 (Minn.1981)).

Substantial evidence is evidence upon which reasonable minds can rely in arriving at a conclusion. *Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 343 (Minn.1981). In determining whether such evidence is present, this court must look at the record as a whole. *Ganyo*, 311 N.W.2d at 500.

As strongly recommended by the Supreme Court in *Ganyo* and preceding cases, the School Board hired an independent hearing examiner to conduct the hearing, make findings of fact, and arrive at a recommendation for the Board. The hearing examiner noted the importance in this case of the relative credibility of the two primary witnesses, Fisher and Olson. Having had the opportunity to assess that credibility, the hearing examiner noted:

> As to Olson, there is no evidence in the record that would support a finding that his testimony was the result of a fantasy or a fabrication, or that it was a physical impossibility. No corroboration was legally required even under a criminal prosecution, which this is not. M.S. 609.-347, Subd. 1. No motivation for false testimony can be inferred.

The hearing examiner's finding is supported by the record. Olson's testimony about the abuse he experienced was detailed and consistent. He also provided an accurate diagram of both the outer office and Fisher's inner office, including the location of furniture in Fisher's office and photographs of Fisher's children, even though he had not been there for 13 years.

Contrary to Fisher's argument, there is no indication that the hearing examiner or the Board failed to consider contradictory testimony. The hearing examiner's proposed findings specifically note Fisher's consistent denial of the charges. Having had an opportunity to observe these witnesses and weigh their statements, he accepted Olson's testimony as more credible.

■ In resolving the conflict between the testimony of Olson and that of Fisher, we must defer to the opportunity of the hearing examiner, as well as a majority of the Board itself, to see and hear the witnesses and to judge their credibility. *See Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982) (trial to the court).

The testimony of the other witnesses, although not nearly as critical, shows that the incidents could have taken place without notice. Children were commonly called to Fisher's office, but no records of these contacts were kept. His secretary testified that she could not recall ever interrupting Fisher when his door was closed.

■ The record contains competent and substantial evidence to support the School Board's findings. Proof of a teacher's sexual acts with a student is uniformly held to be sufficient grounds for dismissal. *See generally* Annot., 78 A.L.R.3d 19, 26 (1977).

## II

The remoteness of the incidents charged in this case is important in assessing both the substantive evidence available to prove or rebut the charges and the procedural fairness accorded to Fisher.

■ There is no limitations period in Minn.Stat. § 125.12, subd. 8 (1982), the provision containing grounds for immediate discharge. The standards of procedural due process, however, are applicable to teacher termination hearings. *Hardy v. Independent School District No. 694*, 301 Minn. 373, 378, 223 N.W.2d 124, 127 (1974). The statute requires that the school board notify the teacher, in writing, of its grounds for the proposed discharge "in reasonable detail." Minn.Stat. § 125.12, subd. 8. The School Board here gave Fisher all the information he requested concerning the charges against him. Although the formal notice provided him could have been more specific, appellant does not contest the notice afforded him. Rather, he claims a deprivation of due process arising from the remoteness of the charges, the resulting loss of relevant evidence, and impeachment of witnesses' memories.

The California Supreme Court, in *Morrison v. State Board of Education*, 1 Cal.3d

214, 229, 82 Cal.Rptr. 175, 186, 461 P.2d 375, 386 (1969), developed an eight-factor test to apply in determining whether teacher conduct indicates unfitness to teach. One of the factors identified in *Morrison* is the proximity or remoteness in time of the conduct. We believe the *Morrison* test, if applied, would mandate Fisher's immediate dismissal. In the terms employed in *Morrison*, the adverse effect upon students and the degree of that adverse effect easily outweigh the remoteness of the conduct charged.

Although the remoteness issue has not been addressed by the Minnesota Supreme Court, it has been addressed in a district court case, and the reasoning in that decision is applicable here. In *Johnson v. Independent School District No. 294*, No. 12305, Dist.Ct.Mem. (3d Judicial Dist. Feb. 12, 1980), a teacher was discharged for having sexual relations with a 16-year-old student. The hearing took place three to four years after the incident. The court's memorandum states:

> The fortuitous fact that the school board did not have immediate knowledge of the alleged sexual relationship with the sixteen-year old minor student is not the Board's fault. There is no showing that the Board unduly delayed in bringing this termination action after it had received knowledge of the alleged occurrence. *By virtue of the nature of the offense—sexual intercourse with a minor student of the district—it may be considered doubtful whether such conduct could ever be too remote in time.* * * * The court concludes that the incident * * * was not too remote in time.

*Id.* at 17.

Fisher argues that he was prejudiced by the remoteness of the incident because Olson's second and third grade teachers could not testify as to the frequency of Olson's visits to Fisher's office. The loss of this possibly relevant evidence, however, did not constitute a deprivation of due process. It is unlikely that this testimony would have been any different than that of other teachers at the hearing, all of which was

less important than that of Olson and Fisher, the only real witnesses. The sexual contact alleged here occurred in the private confines of the principal's office. It was not likely to produce any corroborating evidence, nor is any required. Appellant had a lengthy hearing on the charges, conducted by an impartial hearing examiner, with every opportunity for cross-examination. We believe that these procedures were fundamentally .fair and satisfied the requirements of due process.

### DECISION

The immediate discharge of appellant was supported by substantial evidence. The seriousness of the charges of sexual contact with a student required dismissal, despite the remoteness of the conduct. That remoteness did not result in a denial of due process to appellant.

Affirmed.