**Anastasia KROLL, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 593, Respondent.**

**No. 51535.**

Supreme Court of Minnesota.

April 10, 1981.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Donald W. Selzer, Jr., St. Paul, for appellant.

Dickel, Johannson, Wall & Taylor and Lee Wall, Crookston, for respondent.

SHERAN, Chief Justice.

Appellant, a tenured school teacher in respondent school district, was immediately dismissed under Minn.Stat. § 125.12, subd. 8 (1980) as a result of an incident that occurred on April 25, 1979. Following the hearing that led to her dismissal, appellant petitioned the district court for a writ of certiorari. The writ issued and, after a hearing on the merits, it was vacated by Ninth District Judge Robert A. Peterson. Appellant subsequently commenced the instant appeal. We reverse.

Appellant was a third grade teacher at Washington Elementary School in Crookston. As of the date of the incident at issue, she had served 23 years without a blemish on her record. A classroom evaluation conducted by the school principal on September 12, 1978 stated that "[t]he atmosphere was condusive [sic] to good learning." Another evaluation, dated January 13, 1978, said: "The teacher gave special attention to a new student experiencing adjustment problems. The teacher is concerned about the health and safety of students."

Against this backdrop, the events of April 25, 1979 occurred. The following testimony was elicited at the hearing conducted by the school board. On the day in question, appellant was apparently having discipline problems. A student named Brent Gaber threw or pushed a crayon he had been playing with off his desk and onto the floor. When asked if he was responsible for throwing the object on the floor, Brent denied it. After his denial, appellant told Brent to stand beside his desk and extend his arms to the side in "airplane" fashion.

The class then began jeering and laughing at Brent during the periods in which he failed to keep his arms up. As appellant returned to her desk, she noticed that several pins were lying in the chalk tray. She picked them up and continued to move toward her desk when one of the children cried out "She has pins!"

At this point, there is a sharp division between the account of appellant and the testimony of Brent Gaber and two other children from the class. Appellant stated that on one occasion, when Brent lowered his arms, she pointed at Brent and told him to raise his arms. Although she was close to Brent, appellant said no contact was made with his arm. Appellant testified that she pointed with the hand that did not have pins in it and that Brent held his arms out for a "[v]ery short time" before picking up the crayon.

Brent Gaber testified that after he held his arms out for two minutes, appellant placed a stick pin approximately an inch under each elbow to make sure the arms remained extended. She allegedly did this for three minutes until Brent admitted throwing the crayon and sat down. Another student testified that after two minutes appellant placed a stick pin approximately an inch and a half under each arm between the elbow and the wrist. He said the pins were held under Brent's arms for five minutes, at which point he admitted responsibility and sat down. A third student testified that for the first three minutes, Brent would lower his arms when appellant was not looking. Then for six or seven minutes appellant held a stick pin about an inch and a half below each wrist. The children agreed that Brent was never actually touched by a pin.

At some point during the events described above, a social worker entered the classroom for a meeting with one of the students. She testified that upon entering the room, appellant was crouched down, her eyes close to the level of Brent's. She observed that Brent was standing with extended arms and that the children were taunting him. At this time, and when appellant came over to talk to the social worker, no pins were observed. After hearing an account of the incident from the student she came to visit, the social worker made a report to the principal. The school board resolved to initiate termination proceedings one week after the incident.

In their testimony, the social worker and another teacher with some experience in disciplinary matters concluded that punishment before the entire class was potentially detrimental to the self-esteem of all the students and that effective alternatives were available. Neither witness addressed the impact of discipline by the use of pins and there was no evidence of actual physical or psychological damage to any child in appellant's classroom. In addition, the school district has no written discipline policy. Finally, the superintendent of schools stated that appellant's prior record was not considered when he recommended immediate termination.

The school board adopted the following findings: that Brent Gaber was forced to stand with his arms extended "for a period of time of not less than five minutes duration"; that to prevent the lowering of his arms appellant "did hold a pin under each of the said Brent Gaber's arms"; that "the punishment described * * * constituted a threat of personal pain and harm"; that "the punishment * * * was cruel, excessive, and contrary to the standard of professional conduct established for certified classroom teachers"; that "the punishment * * * is an emotional threat to a third grade child and a psychological risk to all other students in the room at the time of the punishment"; and that "the punishment * * * is of such an extreme nature that it can, on no occasion, be accepted as proper discipline, irrespective of the teaching record of the involved teacher." From these findings, the school board concluded that appellant "engaged in conduct unbecoming a teacher which required her immediate removal from the classroom."

On appeal we are asked to decide whether the school board's findings are supported by substantial evidence and whether the

board's decision to terminate appellant under the procedure in Minn.Stat. § 125.12, subd. 8 (1980), rather than the procedure for termination in Minn.Stat. § 125.12, subd. 6 (1980), was arbitrary, unreasonable, or contrary to law.

In reviewing the action of respondent in this certiorari proceeding, the court plays a limited role. Cases interpreting the discharge provisions of the teacher tenure law, Minnesota Statutes chapter 125, are in agreement that the court is not at liberty to hear the case de novo and substitute its findings for those of the school board. *Liffrig v. Independent School District No. 442*, 292 N.W.2d 726 (Minn.1980); *State ex rel. Lucas v. Board of Education & Independent School District No. 99*, 277 N.W.2d 524 (Minn.1979); *State ex rel. Ging v. Board of Education*, 213 Minn. 550, 7 N.W.2d 544 (1942), *overruled in part on other grounds, Foesch v. Independent School District No. 646*, 300 Minn. 478, 223 N.W.2d 371 (1974). Citing *Lucas* and *Ging*, the *Liffrig* court stated: "A school board's decision to terminate a teacher or principal should be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law." 292 N.W.2d at 729. Although not required by the statute, this court requires written findings from school boards that discharge teachers in order to assist judicial review. *Morey v. School Board of Independent School District No. 492*, 268 Minn. 110, 115–16, 128 N.W.2d 302, 306–307 (1964). When embarking upon the review described above, however, the supreme court owes no deference to the trial court's determination. *See Urban Council on Mobility v. Minnesota Department of Natural Resources*, 289 N.W.2d 729, 732–33 (Minn.1980); *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 823–24 (Minn.1977).

We have also held that when conducting its hearing, a school board does not have to observe the rules of evidence. *See State ex rel. Lucas v. Board of Education & Independent School District No. 99*, 277 N.W.2d 524, 528 (Minn.1979). However, considering the seriousness of teacher termination, limits upon the type of testimony that may be considered are essential. The evidentiary prerequisites in hearings of this nature were succinctly summarized in *Morey v. School Board of Independent School District No. 492*, 271 Minn. 445, 136 N.W.2d 105 (1965):

> It is true that an administrative body acting quasi-judicially is not bound by strict procedural rules which circumscribe the action of a court, and that incompetent evidence is not fatal to its determination. Nevertheless, when a teacher's job is at stake, a just concern for fair play would require that the evidence which is calculated to support the charges should be relevant and have probative value. The board should not have to find support for its determination in hearsay or to make deductions from opinions and views relating to technical or theoretical principles. If there is substance to the charge that the teacher's conduct and want of competence require her dismissal, there ought to be substantial evidence of it * * *.

*Id.* at 448–49, 136 N.W.2d at 107–08 (footnote omitted).

To determine whether the substantial evidence supports a finding, the entire record must be consulted as part of an inquiry into the probative force of the evidence taken as a whole. *Liffrig v. Independent School District No. 442*, 292 N.W.2d 726, 729 (Minn.1980). Our view of the record taken as a whole convinces us that the substantial evidence cannot support the finding that appellant held pins under the arms of Brent Gaber for the purpose of preventing him from lowering them. The testimony of the three children is fraught with inconsistencies that effectively eliminate its probative value: only one child observed the social worker enter the room during the incident; there was a conflict whether Brent picked up the crayon before or after punishment or whether he did so at all; only one of the three recounted appellant's alleged demonstration to the class of

Brent's conduct; only one of the children stated that Brent's name was written on the blackboard; finally, one child said there was no laughing and jeering and the others said that there was. In addition, the testimony regarding the length of time Brent allegedly stood with pins under his outstretched arms is incongruous. One student said three minutes, another said five minutes, and the third stated it was fifteen minutes, but on cross-examination said it was six or seven minutes. Considering the nature of the punishment, the ability of any of these witnesses to judge time is highly questionable. The reasonableness of the school board's finding is even more doubtful in light of the fact that Brent had difficulty recalling the incident and that not one student in the class, including Brent, expressed a fear of returning to class or reported this "cruel and excessive" conduct to their parents after the incident occurred.

We do not take our decision regarding the competency and probative value of the child testimony lightly. Often student testimony may be the only source of evidence contrary to the possibly self-serving explanation from the teacher. However, under these unique facts, when the discrepancies in the testimony are both numerous and highly variable, reasonable minds cannot rely upon the testimony to arrive at a precise conclusion regarding the purpose for which appellant was holding pins in her hand.

The factual findings that we leave undisturbed as supported by the substantial evidence arguably justify the disciplinary measures imposed upon appellant. Therefore, we must now consider whether, in deciding to terminate appellant's employment immediately, the board acted in a fashion that was arbitrary, unreasonable, or contrary to law.

The school board used one of the two termination procedures that the legislature has established. Each procedure lists specific grounds for termination. The procedure in Minn.Stat. § 125.12, subd. 6 (1980) provides for discharge at the end of the school year if the teacher has "failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them." Id.[1] Minn.Stat. § 125.12, subd. 8 (1980) lists the more serious grounds for immediate discharge. Appellant was discharged under subdivision 8(b), "Conduct unbecoming a teacher which requires the immediate removal of the teacher from his classroom or other duties."[2]

1. The full text of subdivision 6 reads as follows:
   Subd. 6. Grounds for termination. A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:
   (a) Inefficiency;
   (b) Neglect of duty, or persistent violation of school laws, rules, regulations, or directives;
   (c) Conduct unbecoming a teacher which materially impairs his educational effectiveness;
   (d) Other good and sufficient grounds rendering the teacher unfit to perform his duties.
   A contract shall not be terminated upon one of the grounds specified in clauses (a), (b), (c), or (d), unless the teacher shall have failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them.
   Minn.Stat. § 125.12, subd. 6 (1980).

2. The full text of subdivision 8 reads as follows:
   Subd. 8. Immediate discharge. A school board may discharge a continuing-contract teacher, effective immediately, upon any of the following grounds:
   (a) Immoral conduct, insubordination, or conviction of a felony;
   (b) Conduct unbecoming a teacher which requires the immediate removal of the teacher from his classroom or other duties;
   (c) Failure without justifiable cause to teach without first securing the written release of the school board;
   (d) Gross inefficiency which the teacher has failed to correct after reasonable written notice;
   (e) Willful neglect of duty; or
   (f) Continuing physical or mental disability subsequent to a twelve months leave of absence and inability to qualify for reinstatement in accordance with subdivision 7.
   Prior to discharging a teacher the board shall notify the teacher in writing and state its ground for the proposed discharge in reasonable detail. Within ten days after receipt of this notification the teacher may make a written request for a hearing before the board and it shall be granted before final

Appellant argues that the school board erred in discharging immediately under subdivision 8. Respondent is of the view that decisions regarding conduct that involves the safety of students must be left to local school boards. This issue is one of first impression. Not only have we never been faced with a discharge for "conduct unbecoming a teacher," but the discretion of a school board to discharge under one procedure or the other has never been challenged.

This court has established general principles regarding school board terminations under teacher tenure laws. In *McSherry v. City of St. Paul*, 202 Minn. 102, 277 N.W. 541 (1938), the court noted: "Plainly, the legislative purposes sought were stability, certainty, and permanency of employment on the part of those who had shown by educational attainment and by probationary trial their fitness for the teaching profession." *Id.* at 108, 277 N.W. at 544; *accord, Hudson v. Independent School District No. 77*, 258 N.W.2d 594, 597 (Minn.1977) ("overriding legislative purpose behind the tenure laws was undeniably the prevention of arbitrary demotions and discharges of teachers without regard to their ability"). Balanced against the purpose of teacher tenure legislation is the role of the local school board. The *McSherry* court noted that merit has been established "as the essential basis for the *right* of permanent employment. On the other hand, it is equally clear that the [teacher tenure] act does not impair *discretionary* power of school authorities to make the best selections consonant with the public good." 202 Minn. at 108, 277 N.W. at 544 (emphasis in original). The court in *Keller v. Independent School District No. 742*, 302 Minn. 324, 224 N.W.2d 749 (1974), stated that "this legislation was not intended to place an unreasonable restriction on the powers which a school board must possess to effectively administer the operation of the public schools." *Id.* at 328, 224 N.W.2d at 752; *see Anderson v. Consolidat-*

*ed School District No. 144*, 196 Minn. 256, 264 N.W. 784 (1936). In *Foesch v. Independent School District No. 646*, 300 Minn. 478, 485, 223 N.W.2d 371, 375 (1974), the court acknowledged that a balance must be struck between the two interests expressed above.

Currently, the decision to discharge under one provision or another is totally within the discretion of local boards of education. This situation would ordinarily be consistent with the balance this court has said should be struck between local control of teacher discipline and the avoidance of arbitrary dismissals of teachers of proven fitness. Unfortunately, this balance may have been upset by the fact that the statute lends itself to two different constructions. Respondent argues that the decision to discharge under subdivision 8 rather than subdivision 6 should be made by a detrimental impact analysis because conduct unbecoming a teacher is distinguished in the two subdivisions by qualifying language that emphasizes severity of the conduct's impact upon the class and the teacher's ability to teach: "material impairment of educational effectiveness" versus the need for "immediate removal" from the classroom. Under respondent's analysis, prior exemplary record is irrelevant and one behavioral incident of sufficient severity will justify immediate discharge. Because the school board conducted a detrimental impact analysis, respondent asserts that the decision to discharge was reasonable.

Appellant argues that the statute focuses upon remediability and not detrimental impact. The basis for this argument is that discharge under the grounds listed in subdivision 6 is not permitted "unless the teacher * * * failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them." Therefore, if the conduct is not remediable under subdivision 6, immediate

action is taken. The board may, however, suspend a teacher with pay pending the conclusion of such hearing and determination of the issues raised therein after charges have been filed which constitute ground for discharge.

Minn.Stat. § 125.12, subd. 8 (1980).

discharge is justified under subdivision 8. Presumably, a remediability analysis would include severity of conduct and prior record.

■ Despite the policy reasons for permitting broad school board discretion in matters of teacher termination, we are of the opinion that some guidance is needed from this court to assist local boards of education in determining which termination procedure to follow. The reasons for our view are several. First, because the statute is susceptible of two interpretations, teacher discipline for identical conduct could vary from district to district and from case to case. The legislature could not have intended such a result. Second, we have on several occasions questioned the fairness of school board termination proceedings under our current statute. This is because local boards of education are allowed to exercise the three-part role of prosecutor, judge, and jury. *See, e. g., Liffrig v. Independent School District No. 442,* 292 N.W.2d 726, 730 (Minn.1980); *State ex rel. Holton v. Board of Education of Independent School District No. 84,* 301 Minn. 275, 282, 222 N.W.2d 277, 282 (1974); *Morey v. School Board of Independent School District No. 492,* 276 Minn. 48, 49–50, 148 N.W.2d 370, 371–72 (1967). To lessen this potential prejudicial impact upon termination proceedings, we recommended in *Liffrig* that hearing examiners be employed to hear teacher termination cases.[3] Finally, the canons of statutory construction permit this court to provide an interpretation of the statute that best corresponds to the intent of the legislature. *Beck v. City of St. Paul,* 304 Minn. 438, 445, 231 N.W.2d 919, 923 (1975); Minn.Stat. § 645.16 (1980). Therefore, the discretion of local school boards would not be unjustifiably restricted by a supreme court opinion clarifying the standards to be used when deciding to discharge for conduct unbecoming a teacher under subdivision 6 or subdivision 8.

■ In our view, the remediability analysis corresponds most closely to the balance we have stated should exist between the administrative discretion of local school boards and the prevention of arbitrary dismissals of teachers with proven fitness. Additionally, the remediability analysis best serves the purpose of the legislature in creating two termination procedures.

■ Illinois, like Minnesota, has a two-part discharge procedure. If the school board determines that the conduct is not remediable, then immediate discharge is proper after a hearing. If the conduct is remediable, discharge cannot occur until after the teacher is given an opportunity to correct the deficiencies. Ill.Ann.Stat. ch. 122, § 24–12, paras. 2–3 (Smith-Hurd Cum. Supp.1980–1981). The Illinois court has stated that the test for determining whether a cause of dismissal is remediable "is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her." *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622,* 67 Ill.2d 143, 153, 8 Ill.Dec. 84, 365 N.E.2d 322, 326 (1977).

■ We look upon this definition with favor, but add the following observations. First, respondent's interpretation of the statute would require only an examination of the conduct leading to disciplinary action. This view is inconsistent with our case law. If the purpose of the tenure statute is to avoid discharge of teachers who have demonstrated their fitness over the years then refusal to consider evidence of this fitness would negate the advantage of tenure. The prior record of a teacher in disciplinary proceedings must always be considered under either termination procedure.

■ A second factor to consider is whether one behavioral incident should be sufficient to discharge under subdivision 8 or whether repeated misconduct is necessary. Courts in other jurisdictions have

---

3. Not only do we adhere to the view that we expressed in *Liffrig,* we believe that a hearing examiner should be hired in *all* cases unless

unusual or extenuating circumstances prevent it.

interpreted their tenure laws to allow discharge after one incident of sufficient severity "even against a teacher with a long and unsullied record of service." *Landi v. West Chester Area School District*, 23 Pa. Cmwlth. 586, 590, 353 A.2d 895, 897 (1976) (differently worded statute) (teacher dismissed for shoving a student's head against blackboard); *see In re Fulcomer*, 93 N.J.Super. 404, 421, 226 A.2d 30, 39 (1967). Under the remediability standard, school boards may determine when a single act is so outrageous that it cannot be remedied in light of the danger the teacher's presence in the classroom would present. However, a single incident of sufficient severity may only justify dismissal in light of the teacher's record as a whole. *See Wright v. Superintending School Committee*, 331 A.2d 640, 647 n.3 (Me.1975); *Sargent v. Selah School District No. 119*, 23 Wash.App. 916, 923–24, 599 P.2d 25, 29 (1979).

Finally, local boards must consider whether the conduct resulted in actual harm or threatened harm. Actual harm includes both physical and psychological harm. Although school boards should not be required to wait for harm to come to their students before discharging a teacher, the absence of harm is one fact that should be considered in determining whether conduct is remediable.

Under the preceding analysis, the primary question that should be asked when deciding to dismiss a teacher for conduct unbecoming a teacher under subdivision 6 or subdivision 8 is: is the conduct remediable? In the present case, the school board refused to give full consideration to appellant's prior record. On the basis of conduct that can be shown to have occurred by way of substantial evidence, appellant's single act of misconduct in 23 years is insufficient to justify immediate dismissal. Finally, there was no evidence of actual harm to any of the students. At the hearing, there was only evidence of potential psychological damage to the class.

At best, this record supports use of the subdivision 6 procedure. There is no indication that, with a proper warning, appellant could not have adapted her approach to student discipline to fit the district's unwritten policy. Accordingly, the decision of the respondent school board to dismiss immediately under subdivision 8 was arbitrary, unreasonable, and contrary to law. We therefore reverse and order respondent to reinstate appellant with back pay pursuant to Minn.Stat. § 125.12, subd. 11 (1980).

Reversed.

SCOTT, J., took no part in the consideration or decision of this case.