**Kenneth W. RUSSELL, Relator,**

v.

**SPECIAL SCHOOL DISTRICT NO. 6, Respondent.**

**No. C9–84–1723.**

Court of Appeals of Minnesota.

April 30, 1985.

William F. Garber, Minneapolis, for relator.

Joseph E. Flynn, Thomas M. Sipkins, St. Paul, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Kenneth Russell, a teacher with respondent School District No. 6, was accused of physically abusing two students. A termination proceeding was commenced pursuant to Minn.Stat. § 125.12, subd. 8 (1982) and he was dismissed from his position in August 1984. The school board's dismissal affirmed the findings of a hearing examiner dated August 7, 1984. We affirm.

## FACTS

Russell was employed as a teacher with the South St. Paul School District from 1966 until his dismissal in August 1984. Russell taught Industrial Arts and, more recently, physical education.

On April 18, 1984, Russell was notified that the school board adopted a resolution to immediately discharge him pursuant to Minn.Stat. § 125.12, subd. 8. Russell requested the appointment of an independent hearing examiner. On May 15, 1984, the school board appointed a hearing examiner;

hearings were held on June 19, 21, 22, 25, and July 23 and 25, 1984.

*Prior record*

On April 29, 1981, during a softball game in which Russell was pitching, student Tom Ruckmar got into a verbal exchange with another student. Russell became angry and told Ruckmar to remove his glasses. Russell then hit him in the chest three times causing him to fall to the ground. He then grabbed Ruckmar by the hair and ears and pulled him to a standing position. Russell then moved towards Tim Pladson and grasped him by the hair and ears to shake him while yelling at him. Both boys were 14 years old at the time.

These activities were witnessed by dozens of students in the lunch room and by the superintendent of schools, Ray Powell. There was conflicting testimony over the actual amount of force used, but the record supports the conclusion that it was considerable.

In 1983, Russell had two other encounters with students where a confrontive style of discipline was adopted. As a result, two personnel advice letters were sent to Russell directing him to follow an assertive discipline plan and to improve his relations with the students.

On August 23, 1983, Russell received a formal letter of deficiency pursuant to Minn.Stat. § 125.12, subd. 6 (1982). The letter listed nine deficiencies and directed Russell to develop an assertive discipline plan, directed Russell not to threaten students with physical punishment, refrain from all use of corporal punishment and to avoid confrontation with any particular student. The letter concluded as follows:

Your immediate attention is directed to the deficiencies and directives listed above. You should take whatever steps are necessary to correct the deficiencies and follow the directives. Failure to do so could result in your termination as a teacher in South St. Paul School District. I am available to assist you to improve your performance as a teacher.

*April 6, 1984 incidents*

During a kickball game, student Gary Lewandowski threw a ball at another student, claiming the student was off base. Russell accused Gary of deliberately throwing the ball at a player already safe on base. Russell called Gary over to the doors of the weight room where he grabbed Gary by the hair near the ear and pulled him into the weight room. He then threw Gary down on the bench.

A second incident on April 6, involved student Christopher Ricker. Ricker had asked Russell, who was watching rough horseplay between two other students, whether he was going to let that go on. Russell then grabbed Chris forcefully by the arm and jabbed him in the chest a few times. Because other students were present, he led Chris to a different area of the locker room, where he grasped Chris by the shoulder yoke with his thumbs firmly pressing at a point above Chris' clavicle. He then ground his fist into Chris' chin and mouth to get his chin up.

Russell's termination was the result of the two separate incidents on April 6, 1984, together with his prior record, in which he was accused of using unreasonable and inappropriate force in disciplining students.

The hearing examiner concluded that Russell's conduct:

1. constituted insubordination;
2. was not remediable;
3. constituted conduct unbecoming to a teacher;
4. shows a deterioration of his relationship with many students; and
5. was unwarranted and unreasonable.

### ISSUES

1. Were the hearing examiner's findings supported by substantial and competent evidence?

2. Did the school district properly consider Russell's prior teaching record?

3. Did the district waive its right to terminate Russell pursuant to the termination proceedings under Minn.Stat. § 125.12, subd. 8?

4. Was the hearing examiner biased because he was hired and paid for by the school district?

## ANALYSIS

### Standard of Review

■ In reviewing the actions of the school district, this court cannot hear the case de novo and substitute its findings for those of the school board. *Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 342 (Minn.1981).

A school board's decision to terminate a teacher or principal should be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law." *Liffrig v. Independent School District No. 442*, 292 N.W.2d 726, 729 (Minn.1980).

### I

■ The hearing examiner concluded that, based on the April 6 incidents as well as Russell's prior record, the district's decision to terminate Russell was "neither arbitrary, capricious, nor unreasonable" and was "grounded on good cause belief that [Russell's] tendency to physical confrontation with students is not remediable." This court "must defer to the opportunity of the hearing examiner, as well as a majority of the Board itself, to see and hear the witnesses and to judge their credibility." *Fisher v. Independent School District No. 622*, 357 N.W.2d 152, 155 (Minn.Ct.App. 1984); *see In re Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982). Russell concedes that "credibility of witnesses plays a major role in the determination of the case."

Gary alleges that Russell struck him with a backhand to the mouth, causing his gums and lip to bleed and then told him to do fifty push-ups and fifty sit-ups. Witness Bart Brodt testified that Russell grabbed Gary "from the back of the hair and pulled him in the weight room and then turned and threw him over the side up against the wall and then the door shut and I couldn't see what happened after that."

Carl Lehman testified that Russell threw Gary against a wall but wasn't sure where he grabbed him. Dean Klinkhammer, a non-student, testified that Russell never hit Gary but had grabbed him by the shirt and forced Gary to a bench.

■ The hearing examiner's conclusion that, although Russell did not strike Gary a backhand blow to the mouth, the degree of force used was unwarranted and unreasonable, is supported by the evidence.

As to Chris, witnesses testified that Russell grabbed him forcefully by the arm and jabbed him in the chest a few times. The record as a whole supports the examiner's findings and conclusions that there was actual and potential physical and psychological harm to both students. This, together with Russell's prior record, supports the district's decision to dismiss Russell.

### II

■ The legislature has established two termination procedures, each listing specific grounds for termination. The first, section 125.12, subd. 6, provides for discharge at the end of the school year if the teacher "failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them." Minn.Stat. § 125.12, subd. 6 (1982). The second procedure grants a school board the authority to discharge immediately a teacher who is guilty of any one of the listed grounds for termination. Minn.Stat. § 125.12, subd. 8 (1982). Russell was discharged under subdivision 8(b), "Conduct unbecoming a teacher which requires the immediate removal of the teacher from his classroom or other duties;" 8(d), "Gross inefficiency which the teacher has failed to correct after reasonable written notice;" and 8(e), "Willful neglect of duty."

Russell argues his prior teaching record should not have been introduced into evidence because certain subd. 8 proceedings don't require its use. In other words, he claims the previous events are irrelevant.

Under Russell's interpretation, if a teacher is being terminated for one of the more serious offenses listed in subdivision 8, then the prior record of the teacher is irrelevant because the act would be terminable regardless of any prior history. The argument has no merit.

In deciding whether to proceed under subdivision 6 or 8, the school board must determine whether the conduct is remediable.

> Under the remediability standard, school boards may determine when a single act is so outrageous that it cannot be remedied in light of the danger the teacher's presence in the classroom would present. However, a single incident of sufficient severity may only justify dismissal in light of the teacher's record as a whole.

*Kroll,* 304 N.W.2d at 346. In *Kroll,* the court concluded that a single act of misconduct over 23 years of teaching was not sufficient to justify her immediate dismissal. Russell interprets *Kroll* to hold that once it is determined that the conduct in question is irremediable, the use of a prior record becomes superfluous. But then Russell goes on to concede that not all subdivision 8 actions should exclude the past record of the teacher such as discharge for gross efficiency. The supreme court rejected this argument when it stated:

> [The school district's] interpretation of the statute would require only an examination of the conduct leading to disciplinary action. This view is inconsistent with our case law. If the purpose of the tenure statute is to avoid discharge of teachers who have demonstrated their fitness over the years then refusal to consider evidence of this fitness would negate the advantage of tenure. *The prior record of a teacher in disciplinary proceedings must always be considered under either termination procedure.*

*Kroll,* 304 N.W.2d at 345 (emphasis added). The court in *Kroll* was attempting to establish a balancing test in determining whether a teacher's conduct is so outrageous that it requires immediate dismissal. On the other hand, some conduct, considered in light of a teacher's past record, may only require the opportunity to remediate.

The school district properly considered Russell's prior teaching record.

## III

On August 23, 1983, Russell received a formal notice of deficiency pursuant to Minn.Stat. § 125.12, subd. 6. The specific deficiencies included, among others, the failure to follow an assertive discipline plan, use of inappropriate verbal discipline and use of corporal punishment. The Notice of Proposed Immediate Discharge issued April 18, 1984, pursuant to section 125.12, subd. 8, listed the following grounds for terminating Russell immediately:

> Insubordination, conduct unbecoming a teacher which requires your immediate removal from your duties and from the classroom, gross inefficiency which you have failed to correct after reasonable written notice, and willful neglect of duty, consisting of the following:
>
> 1. Striking or hitting a student.
> 2. Pushing or pulling a student by the hair.
> 3. Pushing or pulling a student by the arms.
> 4. Pushing, shoving or throwing a student against a bench, wall or locker.
> 5. Grabbing or holding a student by the throat.
> 6. Grinding or shoving your hand or fist into the face or chin of a student.
> 7. Failure to follow an assertive discipline plan properly * * *.
> 8. Failure to avoid using physical force * * *.
> 9. Failure to avoid using corporal punishment * * *.
> 10. Failure to exercise proper or adequate self-control * * *.
> 11. Failure to develop proper relationships with students * * *.

Russell argues the August 23 notice characterized his conduct as remediable and,

therefore, the school district waived its right to bring a termination proceeding pursuant to subdivision 8 upon these grounds after it served the subdivision 6 notice.

The distinction between the two proceedings is that all subdivision 6 termination hearings must be completed by April 1. Since the hearings in this matter weren't completed until the summer of 1984, Russell's contract could not have been terminated until the end of the 1984–85 school year if it proceeded under section 125.12, subd. 6.

■ There is no evidence to support Russell's argument that the school board attempted to "finesse the problem by bringing an action under Subd. 8." The district acted properly in proceeding under subdivision 8.

Obviously there is a correlation between the subdivision 6 notice and the subdivision 8 notice. When the Notice of Deficiency was issued in August 1983, the district had before it certain facts which justified a finding that Russell's conduct was remediable. Russell's conduct in the past was not so outrageous as to be irremediable. After the incidents on April 6, 1984, however, the district was clearly justified in characterizing Russell's conduct as irremediable. His conduct was "so outrageous that it cannot be remedied in light of the danger [Russell's] presence in the classroom would present." *Kroll*, 304 N.W.2d at 346.

■ One factor to consider in determining whether conduct is remediable is "whether the conduct resulted in actual harm or threatened harm" to the student. *Id.* The absence of actual harm, which includes both physical and psychological harm, suggests that the conduct is remediable. *Id.* The board was given several reports which suggested that Russell caused harm to two students on April 6. The record supports the hearing examiner's finding that Russell "sharply pushed [Gary Lewandowski] down on a bench" and that he "jabbed [Chris Ricker] sharply in the chest a few times." Additionally, the district had cause to believe that not only had the deficiencies not been corrected, but

may have been escalating. Because Russell disobeyed management's directives, the district also had reason to proceed with termination proceedings under subdivision 8 on the ground of insubordination. Neither the supreme court nor this court has ever held that one is locked into a subdivision 6 proceeding if a notice of deficiency is sent to a teacher.

■ Russell concedes that if he had backhanded a student in the mouth or ground his fist into his chin for no apparent reason, he could have been discharged pursuant to subdivision 8. But because Russell's actions were in response to the students' misbehavior and because he only grabbed one student's hair, pushed him sharply to a bench and gave one student several jabs to the chest, he argues that his conduct was clearly remediable, citing *Board of Education of School District No. 131, Kane County v. State Board of Education*, 99 Ill.2d 111, 75 Ill.Dec. 441, 457 N.E.2d 435 (1983). This argument is as outrageous as was his conduct.

In *Kane County*, the Illinois Supreme Court held that the teachers conduct in grasping the children by the arm, his fingernails causing their arms to bleed, was remediable conduct. *Kane County* is distinquishable because the teacher's conduct in that case was clearly inadvertant. In the present case, however, Russell intentionally grabbed one student by the hair and threw him to a bench and jabbed a second student several times in the chest. Russell's conduct was by far more serious than the teacher's conduct in *Kane County*.

### IV

■ Russell argues that the hearing examiner hired by the school board was biased because he was hired and paid by the school district.

[A]bsent unusual or extenuating circumstances, a hearing examiner should be hired in all cases.

*Ganyo v. Independent School District No. 832*, 311 N.W.2d 497, 499 n. 2 (Minn.1981); *Schmidt v. Independent School District*

*No. 1*, 349 N.W.2d 563, 567–68 (Minn.Ct. App.1984). Although this court and the supreme court have strongly recommended that independent hearing examiners be hired, neither court has held that such an examiner is automatically biased because hired by the school district. *See, e.g., Fisher*, 357 N.W.2d at 155.

### DECISION

The school district's dismissal of Russell under Minn.Stat. § 125.12, subd. 8 is affirmed.

Affirmed.