James DOWNIE, Relator,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 141, Respondent.

No. C8-84-1969.

Court of Appeals of Minnesota.

May 21, 1985.

Review Denied July 26, 1985.

Thomas D. Creighton, O'Connor & Hannan, Minneapolis, for relator.

Patricia A. Maloney, Knutson, Flynn & Hetland, St. Paul, for respondent.

Heard, considered, and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Relator James Downie appeals the termination of his continuing contract as a teacher in respondent Independent School District No. 141 (the District). We affirm.

## FACTS

Downie was a tenured teacher pursuant to Minn.Stat. § 125.12 (1982). He was first employed by District No. 141 for the 1980–81 school year as a full-time junior high school guidance counselor. He held that position continuously for four years, through the 1983–84 school year. Downie was the only full-time junior high school counselor. His duties included counseling students regarding school and nonschool-related problems and dealing with student discipline problems.

Prior to his suspension, Downie had never received a reprimand or any notice of deficient performance of his duties. His performance evaluations by the junior high principal were uniformly complimentary.

On May 2, 1984, three staff members approached the District's school superintendent and charged that Downie's conduct was improper and unprofessional. The allegations were sufficiently serious that on May 3, 1984, Downie was immediately suspended with pay pending further investigation of the charges. At that time, he was not informed of the charges against him.

On May 24, 1984, the school board unanimously passed a resolution proposing to immediately discharge Downie pursuant to Minn.Stat. § 125.12, subd. 8.

The specific charges upon which the proposed immediate discharge was based were as follows:

1. being involved in a weight-loss bet with two ninth-grade female students, the terms of which included sexual activities with Downie;

2. telling two male teachers in the teachers' lounge about entering into the bet;

3. sending a handwritten note to a ninth-grade female student which stated: "Stay out of my fucking business";

4. repeatedly administering an oral survey to individuals and groups of junior high school students regarding their personal sexual activities;

5. using vulgar, crude, and inappropriate language and stories when speaking to students;

6. sexually harassing staff and students by making inappropriate remarks and staring at their bodies; and

7. breaching the confidentiality of students whom he counseled.

In a July 1984 letter, the District's attorney provided Downie's attorney with specific instances of conduct which supported the District's general allegations.

The District appointed an independent hearing officer and a formal hearing on the matter was conducted on August 7–10, 1984.

For every ground of alleged misconduct, Downie at the hearing either denied that the conduct had occurred, or offered exculpatory reasons to explain his behavior. Students, several teachers, and other staff of the District also testified. Downie's version of various incidents was supported in part by a few witnesses; however, it was substantially contradicted by several others. A prominent child and education psychologist and the school nurse testified about the harm which Downie may have caused. These witnesses' testimony supported the conclusion that Downie's conduct harmed his students, and the potential for further harm existed.

The hearing examiner issued comprehensive and exhaustively-detailed Findings, Conclusion, Recommendation and Memorandum. Determining that testimony supporting Downie's version of the numerous incidents lacked credibility, the hearing examiner listed 51 separate findings supporting the seven grounds of alleged misconduct.

The hearing officer also determined that harm to the students had been incurred and recommended that Downie's employment be terminated immediately pursuant to Minn.Stat. § 125.12, subd. 8 (1982). This

report was adopted without amendment by the school board on September 13, 1984 and Downie's contract was terminated.

On November 8, 1984, Downie filed a writ of certiorari to this court for review of the decision of the school board. He argues that his dismissal violates the provisions of Minn.Stat. § 125.12, subd. 8, and is not based on substantial evidence in the record.

## ISSUES

1. Does the record contain substantial and competent evidence to sustain the determination that the relator committed the alleged misconduct?

2. Was relator's immediate discharge under Minn.Stat. § 125.12, subd. 8 (1982) proper?

## ANALYSIS

1. This court is not at liberty to hear this case de novo and substitute its findings for those of the school board. *Kroll v. Independent School District No. 593,* 304 N.W.2d 338, 342 (Minn.1981). Rather, this court's review is limited:

A school board's decision to terminate a teacher or principal should be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law.

*Id.* (quoting *Liffrig v. Independent School District No. 442,* 292 N.W.2d 726, 729 (Minn.1980); *see also Ganyo v. Independent School District No. 832,* 311 N.W.2d 497, 500 (Minn.1981).

Substantial evidence is evidence upon which reasonable minds can rely in arriving at a conclusion. *Kroll,* 304 N.W.2d at 343. To determine whether substantial evidence supports a finding, the entire record must be consulted as part of an inquiry into the probative force of the evidence as a whole. *Kroll,* 304 N.W.2d at 342. However, unless manifestly unjust, this court must grant substantial deference to the fact-finding process and defer to the opportunity of the hearing examiner and the school board to judge first hand the

credibility of witnesses. *Fisher v. Independent School District No. 622,* 357 N.W.2d 152, 155 (Minn.Ct.App.1984). *See also Reserve Mining Co. v. Herbst,* 256 N.W.2d 808 (Minn.1977).

Essentially, Downie's argument as to the lack of substantial evidence is that his version of the alleged incidents did not prevail. Inasmuch as a hearing examiner is in a unique position to observe the demeanor of witnesses and gauge their truthfulness, the hearing examiner's findings should be accorded great deference. A review of the record provides this court with no compelling rationale to withhold such deference. Abundant support exists in the record for the hearing examiner's conclusion that Downie's testimony was not credible.

The hearing examiner in this case issued a well-reasoned and exhaustively-detailed 69-page memorandum supporting the Findings, Conclusions and Recommendation. We note this memorandum with approval and adopt its analysis of the evidence. Substantial evidence in the record does indeed support the conclusion that Downie committed the alleged misconduct.

2. Minn.Stat. § 125.12 (1982) contains two provisions dealing with the termination of teachers. Subdivision 6 provides the grounds for terminating a continuing contract teacher effective at the close of the school year for conduct "which materially impairs his educational effectiveness" if the teacher has "failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them." Minn.Stat. § 125.12, subd. 6 (1982). Subdivision 8 lists more serious conduct for which the school board may immediately discharge a teacher, including immoral conduct and conduct unbecoming a teacher. Minn.Stat. § 125.12, subd. 8 (1982).

Downie argues that he was improperly discharged immediately pursuant to subdivision 8 of Minn.Stat. § 125.12. He asserts that this case falls within the purview of subdivision 6.

A remediability analysis is necessary to determine whether this case falls properly within subdivision 6 or subdivision 8. *Kroll,* 304 N.W.2d at 345. If Downie's conduct is not remediable under subdivision 6, then his immediate discharge is justified. *Id.* at 344–45. If Downie's conduct is remediable, discharge cannot occur until after he is given an opportunity to correct the deficiencies. *Id.* at 345.

Several factors should be weighed when determining remediability: the prior record of the teacher; the severity of the conduct in light of the teacher's record; whether the conduct resulted in actual or threatened harm, either physical or psychological; and whether the conduct could have been corrected had the teacher been warned by superiors. *Kroll,* 304 N.W.2d at 345–46. Furthermore, school boards are not required to wait for harm to come to their students before discharging a teacher. *Id.* at 346. The absence of harm is one of several factors to be considered in determining whether the conduct is remediable. *Id.* at 346.

Downie asserts that his favorable reviews and lack of warnings show an unblemished record which was not taken into account by the school board. He also argues that the alleged behavior is not sufficiently egregious to justify his immediate removal and that he was entitled to a warning from school officials and an opportunity to remedy the behavior.

The District contends that Downie, a professionally-trained junior high school counselor, should have known that his language and behavior were inappropriate. It asserts that its silence due to lack of knowledge concerning Downie's unprofessional behavior does not constitute approval of the behavior.

Finally, the District argues that warnings would have had no effect on Downie's behavior, and that his behavior caused actual harm to the students which was sufficient to justify his immediate discharge.

The District's arguments are compelling. Again, we note the excellence of the hearing officer's memorandum and adopt her analysis of this issue. This court finds it appropriate, however, to emphasize the following: Downie was a junior high school counselor who counseled students on a one-to-one basis. His was a very influential and sensitive position. Because of his role as counselor, students confided in Downie to a much greater extent than they would in a teacher of English or math. The potential for students to be greatly harmed or greatly aided by their relationship with Downie was substantial. His impact on the lives of impressionable young people of junior high school age was great. Arguably, he should be held to an even greater standard of care and sensitivity than teachers in other disciplines.

At the hearing, a prominent child and educational psychologist gave her expert opinion that junior high school students suffer actual psychological harm from conduct such as Downie's. She also testified that an individual who exhibits such conduct would be unable to remedy his behavior without counseling and further training in professional ethics. These conclusions were based on hypotheticals rather than personal interviews with Downie and his students. While it would have been the better practice to have the expert's opinion based on personal interviews, we cannot find the lack thereof to be a fatal flaw in the District's case.

The most serious of the charges against Downie and certainly the conduct which has the most potential for causing long-lasting harm to students is that upon numerous occasions he breached the confidentiality of students who came to him for counseling. We find particularly offensive Downie's disclosure of an incest victim's confidences to teachers in a social setting who had no compelling professional need for such information. The school nurse's testimony supports that such a disclosure could have devastating psychological consequences for the victim should she ever discover that Downie made such a disclosure. Furthermore, the record supports that such breaches of the confidential relationship between counselee and counselor were not uncommon for Downie. Testimony indicates that some teachers even stopped re-

ferring students to Downie due to their concerns regarding his professional competency and ethics.

 Downie's argument that he was entitled to a warning as to the deficiencies in his performance and that he should be afforded an opportunity to remedy his behavior is without merit. It should not be necessary to tell a counselor that his conduct is inappropriate when the conduct clearly violates the code of ethics which binds the counselor. Nor can we conclude as Downie urges that it was improper for the fact finder to look beyond the bet, the triggering incident here, to determine whether immediate discharge was appropriate. Such information is relevant and indeed necessary, both for determining whether a teacher's conduct constitutes an isolated incident or part of an ongoing pattern and for considering the remediability of that conduct. *See Kroll*, 304 N.W.2d at 345–46.

Downie's dismissal was not arbitrary or capricious. He was suspended with pay pending the hearing in August. He was given adequate notice of the charges against him prior to the hearing and was accorded a full hearing before an impartial, independent hearing examiner who is also an expert in labor and employment law.

While school boards are not required to wait for harm to come to their students before discharging a teacher, we find the harm here to be clear. Upon review of the record indicating the broad scope of unprofessional conduct in this case, we conclude that Downie's immediate discharge pursuant to Minn.Stat. § 125.12, subd. 8, was proper. Furthermore, upon such review we are compelled to conclude that the District would have been remiss in its obligations to its students had it not immediately discharged Downie.

## DECISION

1. The record contains substantial and competent evidence to sustain the determination that the relator had committed the alleged misconduct.

2. Relator's immediate discharge under Minn.Stat. § 125.12, subd. 8 (1982), for alleged immoral conduct and conduct unbecoming a teacher was proper.

Affirmed.