David E. BERANEK, Relator,

v.

JOINT INDEPENDENT SCHOOL
DISTRICT NO. 287, Respondent.

No. C2–86–790.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Review Denied Dec. 23, 1986.

**124**

William F. Garber, Minneapolis, for relator.

Paul C. Ratwik, St. Paul, for respondent.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal requires us to decide if substantial evidence supported the immediate discharge of a teacher in the absence of a prior written record of the teacher's deficiencies. The hearing examiner issued proposed findings of fact and concluded the evidence was insufficient to support petitioner's immediate discharge. The school board, however, adopted the school district's proposed findings of fact and immediately discharged petitioner. We reverse.

## FACTS

From September 1973 until his discharge in March 1986, relator David Beranek had been continuously employed by respondent school district as a dental lab technician instructor. Kamee Kass was a 21–year old student who enrolled in Beranek's course in February 1985. Kass was also enrolled in a remedial math class that met each day during the final hour of relator's morning session.

On Monday, September 16, 1985, Beranek prepared to give an introductory lecture on "crown and bridge" during the final hour of class. Because Kass had already completed that portion of the course, Beranek advised her to go to the math class rather than stay for his lecture. As Kass prepared to go, Beranek, in a curt,

inconsiderate and untactful manner, and in the presence of other students, commented "you wouldn't understand it anyway."

Kass felt humiliated and demeaned by the comment, both with regard to her knowledge of the course and her ability to comprehend class material. On Tuesday, Kass's mother complained to Robert Papas, assistant campus director. Papas directed Russell Fryer, Kamee Kass's counselor, to meet with Kass to determine whether and to what extent she required special help in order to progress in the dental lab technician program.

On Wednesday, Fryer requested Beranek, who had stopped by his office to discuss another student, to send Kamee Kass to Fryer's office. At Beranek's request, Fryer informed him that the request to see Kass arose out of the classroom incident on Monday. Beranek left Fryer's office and returned to the classroom, where he told Kass that Fryer wanted to see her. Although neither directed nor requested to do so, Beranek then accompanied Kass to Fryer's office and asked her whether her appointment with Fryer had anything to do with him. Kass had no reason to know that relator already knew the answer to his question. Kass responded that she was upset by his comment to her in class on Monday. Beranek then stated: "don't make trouble for me ... you are." Kass understood this comment to constitute a threat and felt intimidated and frightened as a result.

A few minutes after Kass entered Fryer's office, Beranek, without knocking, also entered the office. He stated that as long as the discussion was about him he should be there. Fryer attempted to summarize the discussion up to that point but Beranek, who appeared tense and upset, interrupted him and loudly directed a series of personal remarks and criticisms at Kass in a disgusted tone. Beranek told Kass she was always interrupting the class, he was sick of her interrupting him during the lectures, she was not a good student, nobody liked her, and he did not like her. Fryer told Beranek his comments were in-

appropriate and directed him to leave the office. Beranek did not immediately respond and Fryer found it necessary to rise from his chair and direct Beranek a second time to leave his office. Beranek's conduct caused Kass to be so emotionally upset that she was unable to respond to Beranek's comments or to continue any meaningful discussion with Fryer. Fryer spent 15–20 minutes calming Kass down, then told her to go home for the rest of the day.

That afternoon, Beranek submitted a referral form regarding Kass. Referral forms are used to alert the administration of a student's need for special attention due to either commendable or problematic behavior. The referral constituted the first complaint relative to Kass's performance or behavior during the entire period of her attendance at the school. Beranek submitted the referral as an attempt after the fact to justify his actions toward Kass, to discredit her and her complaints against him, and to dissuade her from making further complaints.

As a result of Beranek's actions towards her, Kass withdrew from the dental lab technician program.

In the few years preceding the incident between Beranek and Kass, other students had complained of similar inappropriate behavior by Beranek. In late 1983 or early 1984, a counselor with the school district had talked to Beranek regarding a charge that he had insulted and embarrassed a female student in front of her classmates by questioning her intelligence and her suitability for the program. In addition, during the period of late 1982 to early 1985, a department supervisor had several discussions with Beranek regarding student complaints about Beranek's practice of overreacting to students by shouting and acting without tact, demeaning and belittling students, and hurting students. Administrators recalled these complaints yet had no records of conclusions reached about them. No notice of deficiency or written warning was ever served on Beranek or filed by the administration in connection with any of the complaints.

Following the events of September 16–18, 1985, Superintendent Ronald Carter recommended Beranek's immediate discharge. Carter considered the evidence of Beranek's previous misconduct in determining that his conduct was not remediable. Carter also considered Beranek's conduct of submitting the after-the-fact referral regarding Kass. Finally, he considered the nature and degree of harm suffered by Kass, the likelihood of a repeat of such misconduct, and the possibility of harm to another student.

The school board followed Carter's recommendation and adopted a resolution proposing relator's immediate discharge. Upon Beranek's request, independent hearing examiner Nicholas Chanek conducted a hearing, following which the parties submitted proposed findings, conclusions, and recommendations. The hearing examiner then issued his proposed findings and concluded there was competent and substantial evidence that Beranek's behavior constituted conduct unbecoming a teacher that was clearly inappropriate. However, he also concluded the misconduct constituted a single behavioral incident that was not so outrageous as to justify an immediate discharge. He further concluded that the limited probative evidence of Beranek's prior record, even when coupled with the record of the specific incident, was insufficient to justify Beranek's immediate discharge. Finally, he concluded that the record as a whole lacked competent and substantial evidence that Beranek's behavior was irremediable, and therefore recommended the school board rescind its resolution proposing Beranek's immediate discharge.

In substantial part, the school district's proposed findings paralleled those of the hearing examiner, although the hearing examiner's findings were more detailed and included nearly complete summaries of the testimony presented at the hearing. However, the district drew the opposite conclusions from its findings. Most significantly, the district concluded Beranek's conduct was irremediable and recommended his immediate discharge. The school board de-

clined to follow the hearing examiner's recommendation and instead adopted the district's findings, conclusions, and recommendations. The board terminated Beranek on March 21, 1986.

## ISSUE

Is there substantial and competent evidence to support Beranek's immediate discharge?

## ANALYSIS

A school board's decision to terminate a teacher will be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law. *Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 342 (Minn.1981) (quoting *Liffrig v. Independent School District No. 442*, 292 N.W.2d 726, 729 (Minn.1980)). The reviewing court is not at liberty to hear the case de novo and substitute its findings for those of the school board. *Kroll*, 304 N.W.2d at 342 (citations omitted).

The legislature has established two procedures for the termination of tenured teachers. The first provides for discharge at the end of the school year if the teacher has "failed to correct the deficiency after being given written notice of the specific items of complaint and reasonable time within which to remedy them." Minn.Stat. § 125.12 subd. 6 (1984). One of the listed deficiencies is "conduct unbecoming a teacher which materially impairs his educational effectiveness." *Id.* § 125.12 subd. 6(c).

The second procedure involves more serious grounds and allows for the immediate discharge of a teacher. *Id.* § 125.12 subd. 8. The specific grounds for immediate discharge include "conduct unbecoming a teacher which requires the immediate removal of the teacher from his classroom or other duties." *Id.* § 125.12 subd. 8(b).

Whether a discharge under subdivision 6 or subdivision 8 is appropriate is

determined by the remediability of the teacher's conduct. *Kroll*, 304 N.W.2d at 345. If conduct is not remediable under subdivision 6, immediate discharge is justified under subdivision 8. *Id.* at 344–45. An evaluation of remediability must take into account the teacher's record as a whole, the severity of conduct in light of the teacher's record, and whether the conduct resulted in actual or threatened harm. *Id.* at 345–46.

Both the hearing examiner and the school board agreed Beranek's misconduct was severe. The hearing examiner wrote that proof of severity of the misconduct was not in issue, noting that even Beranek admitted it is never permissible for a teacher to demean, intimidate, threaten or humiliate a student. While Beranek's wrongful remarks referred to class interruptions by Kamee Kass, neither the hearing examiner nor the board found that Beranek's behavior was provoked.

Similarly, both the hearing examiner and the board found relator's conduct towards Kamee Kass resulted in actual harm to her. Kass's departure from the dental lab technician program is evidence of the harm she suffered. Finally, both the hearing examiner and the board agreed that administrators had dealt before with complaints about relator's similar tactless and demeaning statements to students. Again, this finding is supported by substantial evidence on the record.

The critical question here, however, is whether the established facts of severity and harm alone are sufficient to justify Beranek's immediate discharge, given that the evidence of his previous misconduct was limited to hearsay testimony and that Beranek's prior record is devoid of any written evidence of complaints, warnings, or corrective action taken. The hearing examiner reasoned that "oral warnings, without their supporting foundation of past occurrences, are rendered of no probative value."

When conducting its hearing, a school board does not have to observe the

rules of evidence. *Id.* at 342. Incompetent evidence is not fatal to a school board's determination. *Id.* (quoting *Morey v. School Board of Independent School District No. 492,* 271 Minn. 445, 449, 136 N.W.2d 105, 108 (1965)). However, considering the seriousness of teacher termination, limits upon the type of testimony that may be considered are essential. *Kroll,* 304 N.W.2d at 342. When a teacher's job is at stake, a just concern for fair play requires that evidence calculated to support the charges should be relevant and have probative value. *Id.* (quoting *Morey,* 271 Minn. at 449, 136 N.W.2d at 108). A school board should not have to find support for its determination in hearsay. *Id.*

Beranek had a 12–year tenure with respondent. He had never received written notices or warnings of deficiencies regarding his conduct as a teacher. None of the administrators who testified about Beranek's prior record had personal knowledge of any incidents, nor had they ever witnessed inappropriate behavior from Beranek towards students. All of the administrators relied on reports from students and other school employees in describing Beranek's prior record. No investigation was ever conducted to establish the truth or falsity of any of the charges.

■ The administration's failure to document any prior warnings given to Beranek greatly affects the determination of whether his conduct was remediable. The absence of a formal or written record indicates the previous incidents were not so severe as to warrant warning Beranek that a failure to remedy his behavior could result in sanctions, including dismissal. Absent such warning, remediability is a possibility, and his immediate dismissal is not justified. *See Ganyo v. Independent School District No. 832,* 311 N.W.2d 497, 502 (Minn.1981) (when remediability of the underlying problem is a possibility, subdivision 6 is the appropriate statute).

We find independent support for our conclusion that Beranek's conduct may be remediable by referring to the specific acts of misconduct in other subdivision 8 cases.

Since *Kroll,* cases of irremediable misconduct have involved sexual or physical abuse. *See Russell v. Special School District No. 6,* 366 N.W.2d 700 (Minn.Ct.App. 1985) (physical abuse); *Fisher v. Independent School District No. 622,* 357 N.W.2d 152 (Minn.Ct.App.1984) (sexual abuse). Another subdivision 8 case involved a counselor who breached several students' confidentiality. *Downie v. Independent School District No. 141,* 367 N.W.2d 913, 917 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. July 26, 1985). The counselor's abuse included his disclosure to other teachers of an incest victim's confidences, a weight-loss bet with two ninth-grade female students, the terms of which included sexual activities with the counselor, and other incidents of sexual harassment. *Id.* at 915, 917.

■ These cases do not impose limits on the types of misconduct that will be considered irremediable. Nevertheless, the single outrageous act of Beranek is less egregious than the misconduct that justified immediate dismissal in *Russell, Fisher,* and *Downie.* Moreover, as we have noted, "a single incident of sufficient severity may only justify dismissal in light of the teacher's record as a whole." *Kroll,* 304 N.W.2d at 346.

The present proceedings may now become part of Beranek's record and would be competent evidence for future disciplinary proceedings. *See Anderson v. Independent School District No. 623,* 292 N.W.2d 562 (Minn.1980) (subdivision 8 proceedings were justified following a teacher's repeated misconduct when she had previously received a written reprimand informing her that the misconduct was grounds for immediate dismissal). Under the present record, however, as in *Kroll,* there is no indication that with a proper warning Beranek could not have modified his behavior to conform with the district's expectations. *See Kroll,* 304 N.W.2d at 346. We therefore reverse and order respondent to reinstate petitioner with back pay pursuant to Minn.Stat. § 125.12 subd. 11 (1984).

## DECISION

There is not substantial evidence on the record supporting respondent's immediate discharge of appellant. The absence of a prior written record prevents a determination that appellant's conduct was irremediable.

Reversed.