**Carol PECK, et al., Petitioners, Respondents,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 16, Appellant.**

**No. C9–83–1436.**

Court of Appeals of Minnesota.

May 8, 1984.

Patricia A. Maloney, St. Paul, for appellant.

William F. Garber, Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This matter came before the district court on a writ of certiorari to review the written findings of fact which were drafted and proposed by an independent hearing examiner hired by the school board. The school board adopted the proposed findings and conclusions in their entirety. The district court substituted its findings for that of the school board, ordering respondent Virginia Day reinstated to full time teaching status and back pay. The school board appeals. We reverse.

## FACTS

Student enrollment in the Spring Lake Park School District has been declining for several years, with a resulting decline in state financial aid. The school district determined it was necessary to reduce staff for the 1982–1983 school year because of reduced state aid. Among other reductions, the school board discontinued 1.4 music positions.

The school district and the Spring Lake Park Federation of Teachers, the teachers' exclusive bargaining representative, negotiated a seniority policy and plan (Agreement) for placing teachers on unrequested leave of absence for the 1981–83 period. A seniority list was prepared according to the Agreement. Respondent was listed as being licensed only in the subject of music for grades K–12. Since she was senior to another music teacher, the other teacher's entire position was eliminated and respondent lost .4 and retained .6 of her position. There is no dispute about Day's seniority in the music field.

Harlan Marks, a probationary teacher whose name is not on the seniority list, was retained to teach English as a Second Language (ESL), a course he taught prior to the 1982–83 school year. Day's position is that she has taught music to all elementary students including those who spoke English as a second language, that a teacher holding a license in any academic area meets the minimum requirements of the State Department of Education to teach ESL, and that her experience teaching music to students for whom English was a second language qualified her as having successfully taught ESL within the meaning of the Agreement.

## ISSUES

1. Did the district court err in substituting its findings for those of the school board?

2. Is respondent Day entitled to teach English as a Second Language under the negotiated unrequested leave of absence plan contained in the Agreement between the teachers and the school district?

## ANALYSIS

1. The nature of judicial review in a certiorari proceeding under Minn.Stat. § 125.12 is limited. The school board's decision to terminate a teacher will not be heard de novo and will not be set aside by a reviewing court unless the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction or based on an erroneous theory of law. *Ganyo v. Independent School Dist. No. 832*, 311 N.W.2d 497 (Minn.1981), *Kroll v. Independent School Dist. No. 593*, 304 N.W.2d 338 (Minn.1981). *See also Laird v. Independent School Dist. No. 317*, 346 N.W.2d 153, 156 (Minn.1984).

Pursuant to Minn.Stat. § 125.12, subd. 6a (1982), the school district and the teachers exclusive bargaining representative negotiated a seniority policy and plan for placing teachers on unrequested leave of absence. This plan was incorporated into the Collective Bargaining Agreement (Agreement). It provides:

> *15.05 Establishment of Seniority List:*
> (A) The school district shall cause a seniority list (by name, date of employment, qualification and subject matter or

field) to be prepared from its records. It shall thereupon post such list in an official place in each school building of the district no later than December 15 of each year.

(B) Any person whose name appears on such list and who may disagree with the findings of the School Board and the order of seniority in said list shall have twenty (20) working days from the date of posting to supply written documentation, proof and request for seniority change to the School Board.

(C) Within ten (10) working days thereafter the School District shall evaluate any and all such written communications regarding the order of seniority contained in the said list and may make such changes the school district deems warranted. A final seniority list shall thereupon be prepared by the School District, *which list as revised shall be binding on the school district and any teacher.* Each year thereafter the School district shall cause such seniority list to be updated to reflect any addition of or deletion of personnel caused by retirement, death, resignation, other cessation of services, or new employees. *Such yearly revised list shall govern the application of the unrequested leave of absence policy until thereafter revised.* (Emphasis added).

In the fall of 1981, appellant prepared a 1981–82 seniority list for licensed employees who had continuing contract rights. The list included areas in which each teacher was licensed to teach. It did not include teachers on probationary status. The list was posted, no grievances were received, and the school board gave final approval to the list on February 9, 1982.

The seniority list was established under sections 15.05(A), (B), and (C) of the Agreement.

The selection of teachers to be placed on unrequested leave was governed by the seniority list and the following sections of the Agreement:

15.03(C). Teachers placed on unrequested leave shall be done in inverse order of seniority in the field and subject matter employed in positions covered by this Agreement. No teacher shall be placed on unrequested leave if there is any other qualified teacher with less seniority in the same field and subject matter employed.

15.02(C). "Qualified" shall mean a teacher who is licensed to teach full time in the subject matter category and has successfully taught such subject matter category within the Independent School District No. 16 school district.

15.02(D). "Subject Matter" shall mean such categories as are determined by the State Department of Education for licensure purposes. K–6 shall be considered a category for purposes of this Article.

Respondent Day requested a hearing on her proposed unrequested leave. The school district hired an independent hearing officer, who made several proposed findings and conclusions including the following:

1. Virginia Day, seniority number 202, is qualified in the subject matter of Music K–12.

2. Minnesota State Department of Education regulations permit any licensed teacher to teach students in English as a Second Language. Virginia Day has never taught English as a Second Language in the Spring Lake Park School District. It is not outside the School District's authority to propose that a probationary teacher who has been teaching English as a Second Language continue to do so for the 1982–83 school year. Therefore, Virginia Day is not entitled to a position teaching English as a Second Language under the negotiated unrequested leave plan.

The school district adopted the hearing examiner's proposed findings of fact and conclusions and placed respondent Day on unrequested leave. A writ of certiorari was issued by the district court to review this decision and the district court reversed the findings adopted by the school board and substituted the following finding concerning Day's seniority rights:

Pursuant to Article XV of the agreement between the District and the Spring Lake Park Federation of Teachers Local 1355 (Local) Virginia Day, a licensed teacher, should have been provided the opportunity to teach a ESL .4 time since this course, which does not require licensure, was being taught by a probationer having no seniority.

The district court ordered reinstatement and back pay for Day.

Section 15.02(C) of the Agreement defines "Qualified," as meaning "a teacher who is licensed to teach full time in the subject matter category *and has successfully taught* such subject matter within the Independent School District. . . ."

Day has never taught ESL. She is not listed on the final seniority list as being qualified in ESL. Her right to teach an available subject as well as her exercise of seniority over another teacher under these circumstances is contractual.

 2. Laws of 1974, Chapter 458, added two new subdivisions to Minn.Stat. § 125.12, subds. 6a and 6b, which created the concept of unrequested leave. Subd. 6a authorizes the parties to negotiate a seniority policy and procedures to reduce teaching staff when necessary. Subd. 6b does not apply where, as here, the parties have reached an agreement. Subd. 6b does not require that teachers, in addition to being licensed in a subject, also have successfully taught that subject. But a negotiated unrequested leave plan may waive rights afforded to teachers under 6b. *See Wiener v. Board of Education of East Central School District,* 90 A.D.2d 832, 455 N.Y.S.2d 828 (1982).

Unlike the statutory plan in 6b, the Agreement negotiated under 6a gives no absolute preference to continuing contract teachers over probationary teachers. Continuing contract teachers have the right to bump a probationary teacher only if they have successfully taught the subject matter. No logical distinction exists between licensed subjects and unlicensed subjects, such as ESL, which would justify bypassing the contract requirement that a teacher has successfully taught the subject in order to exercise seniority over another teacher who has taught the subject.

### DECISION

 The written findings of the school board were based on substantial evidence of record, were not arbitrary or unreasonable, were not based on an erroneous theory of law, and were in accord with a reasonable interpretation of the negotiated agreement between the parties. The decision of the district court is reversed.