**46**

In re the Proposed Placement of the Following Teachers on Unrequested Leave of Absence from Independent School District No. 566, Daniel BATTAGLIA, Douglas Blechinger, Gregory Ciurleo and Rosanne M. Haynes.

No. C5–89–1401.

Court of Appeals of Minnesota.

Jan. 30, 1990.

Harley M. Ogata, Minnesota Educ. Ass'n; St. Paul, for relators Battaglia, Blechinger and Ciurleo.

Patricia A. Maloney, Ratwik, Roszak, Bergstrom, Maloney & Bartel, P.A., Minneapolis, for respondent Independent School Dist. No. 566.

Heard, considered, and decided by FORSBERG, P.J., and NORTON and BOWEN *, JJ.

## OPINION

ROBERT E. BOWEN, Judge.

Relators Daniel Battaglia, Douglas Blechinger, and Gregory Ciurleo seek review by certiorari of the action by respondent Independent School District No. 566 (Askov District) placing them on unrequested leave of absence (ULA) in accordance with the recommendations of a hearing officer. Relators contend that the Askov District's action was a violation of statute and of contract. Further, they argue that the Askov District violated their seniority rights by using a joint seniority list to assign exchange teachers from Independent School District No. 576 (Sandstone District) to positions formerly held by Askov teachers. We reverse and remand.

## FACTS

In July 1986, the Askov and Sandstone Districts entered into an agreement pursuant to Minn.Stat. § 122.535 (1984). The agreement provided for a cooperative secondary education program between the two districts. Students in grades seven through nine would attend the newly renamed East Central Junior High in Askov and students in grades ten through twelve would attend East Central Senior High in Sandstone. The agreement provided that

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

the employees of each district would not be considered employees of the other district for any purpose, including termination of employees. The agreement also stated:

> For the purposes of layoff and terminations, and according to the agreements of the home districts of each of the teachers, teachers will retain seniority according to the provision of their home district. A Joint Seniority List shall not be formed unless it is through the negotiation process of successor contracts in each district which would allow for said list.

In June 1987, the Askov and Sandstone Districts entered into a Joint Powers Agreement pursuant to Minn.Stat. § 471.59 (1986). This agreement supplemented the earlier agreement to the extent that a Joint Powers Board would have decision-making authority on all issues regarding certified personnel. Under the combined secondary program, teachers were assigned as exchange teachers to teach in either the junior or senior high school regardless of which district employed them.

On June 13, 1988, after the cooperative secondary program had been operating for two years, Askov District and the Askov–Bruno–Kerrick Education Association entered into a Master Teacher's Agreement for the 1987–88 and 1988–89 school years. Article XV of the teacher's agreement utilized the provisions of Minn.Stat. § 125.12, subd. 6a (1986) regarding unrequested leaves of absence (ULA). The Askov District could place a teacher on ULA because of "the discontinuation of a position due to lack of pupils, change in curriculum, or financial limitations." The school board could not employ a new teacher if there was a qualified, licensed teacher on ULA to fill a vacant position. The teacher's agreement reflects no recognition of the existence of the cooperative secondary program and does not provide for a joint seniority list.

In the spring of 1989, a committee made up of representatives from both school districts made a recommendation to the Joint Powers Board to reduce the number of positions at the junior and senior high schools. The recommendation noted:

> I would recommend that the following positions be reduced, based on seniority. That is to say, the person at the secondary level, regardless of which district, would be the person placed on ULA.

At the April 3, 1989 meeting, the Askov School Board adopted a resolution that several positions, including those of the relators, be discontinued. The notice to each relator of his placement on ULA assigned the following reasons for the board's action:

> 1.) Current Deficit in the General Fund of District 566,
>
> 2.) Reduction of State Funding for the 1989–90 school year.
>
> 3.) Loss of student enrollment in District 566.

Ciurleo was later recalled to teach half time, but he declined.

Relators requested a hearing to contest their placement on ULA, and a hearing was held on May 19, 1989. The school superintendent testified that the school district had reduced the number of classes taught in the areas of physical education, industrial arts, and music; that previously, Battaglia had taught physical education, Blechinger industrial arts, and Ciurleo music; and that each of the replacement exchange teachers was employed by the Sandstone District and had more seniority than relators. However, the superintendent professed that the districts were not implementing a joint seniority list.

The hearing officer found that sufficient grounds existed to support the placement of relators on ULA. He also found that there was not a less senior teacher employed by either the Askov or Sandstone District at the position for which each relator was licensed to teach.

## ISSUES

1. Was the hearing officer's determination that sufficient grounds existed for placing teachers on ULA supported by substantial evidence?

2. Was the Joint Powers Board's, and subsequently the Askov District's, decision to place relators, rather than certain Sandstone teachers, on ULA arbitrary or contrary to law?

## ANALYSIS

In a certiorari proceeding under Minn. Stat. § 125.12, the nature of judicial review is limited. *Peck v. Independent School Dist. No. 16*, 348 N.W.2d 100, 101 (Minn.Ct. App.1984). Consequently, a reviewing court may set aside a school board's decision to place a teacher on ULA "only if the decision is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within the school board's jurisdiction, or based on an erroneous theory of law." *Destache v. Independent School Dist. No. 832*, 434 N.W.2d 270, 271 (Minn.Ct.App. 1989); *see also Ganyo v. Independent School Dist. No. 832*, 311 N.W.2d 497, 500 (Minn.1981).

■ 1. Relators first allege that the Askov District's action in placing them on ULA violated the teacher's agreement and Minn.Stat. § 125.12. Minn.Stat. § 125.12, subd. 6a provides that teachers may be placed on ULA for four reasons: discontinuance of position, lack of pupils, financial limitations, and merger of classes caused by consolidation of districts. The existence of a single statutory ground provides sufficient basis for placing teachers on ULA. *Laird v. Independent School Dist. No. 317*, 346 N.W.2d 153, 156 (Minn.1984).

In the notice to each relator, the school board indicated deficit, reduction of funding, and loss of enrollment as reasons for its action. At the hearing, the parties stipulated that financial limitations and lack of pupils were the statutory grounds for layoff. The hearing officer found that the Askov District was experiencing a lack of pupils and financial limitations which justified placement of the relators on ULA. Consequently, a sufficient basis for placing teachers on ULA exists here.

■ 2. Relators also argue that since the district did not have the power to implement, and did not claim to have implemented, a joint seniority list, the decision to place the relators rather than the Sandstone teachers on ULA was arbitrary. The Askov District argues, first, that it did not implement a joint seniority list, and, second, that under the joint powers agreement, the district had the power to use a combined seniority list when placing the relators on ULA.

Several Minnesota Statutes deal with cooperation between and consolidation of school districts. *See* Minn.Stat. § 122.23 (1988) (consolidation of independent school districts); Minn.Stat. § 122.241–.242 (Supp. 1989) (cooperation and combination plan); Minn.Stat. § 122.541 (1988) (Interdistrict Cooperation Agreements (IDCA)). Each of these statutes provides for the use of combined seniority lists in the absence of an agreement providing otherwise. *See* Minn. Stat. §§ 122.532, subd. 3; 122.245, subd. 1; 122.541, subds. 4–5. Under Minn.Stat. § 122.535, a district with fewer than 375 secondary pupils may enter into an agreement to have its pupils instructed in another district. The agreement may provide for the assignment of exchange teachers or "placement on unrequested leave of absence of teachers whose positions are discontinued as a result of the agreement." Minn.Stat. § 122.535, subd. 2 (1988). This section does not provide for combined seniority lists in the event the agreement does not do so.

In this case, the Askov and Sandstone Districts entered into an agreement for a cooperative secondary education program under Minn.Stat. § 122.535. The program was ultimately administered by a Joint Powers Board established under Minn.Stat. § 471.59 (1986). A Joint Powers Board may "exercise any power common to the contracting parties or any similar powers, including those which are the same except for the territorial limits within which they may be exercised." Minn.Stat. § 471.59, subd. 1 (1986).

The joint powers agreement here does not speak to the use of a joint seniority list. While the joint powers statute permits the board to exercise the districts' common powers, the earlier cooperation agreement

under section 122.535 prohibits use of joint seniority lists unless each district negotiates such a provision with its bargaining representative. The Askov teacher's agreement does not contain such a provision. The Askov and Sandstone Districts do not have the power unilaterally to implement a combined seniority list.

At the hearing, the superintendent testified that the district was not implementing a joint seniority list. Nevertheless, the facts compel a finding that the board did just that. The board chose to fill the positions with teachers who had no seniority in the Askov District but who had greater seniority in the Sandstone District than relators had in the Askov District. The committee's recommendation also reflects the unauthorized use of a combined seniority list. Therefore, the school board erred in using a combined seniority list to place relators on ULA.

The Askov District contends that since combined seniority lists are authorized under all the other cooperation and consolidation statutes, the legislature did not intend that combined seniority lists could not be used under Minn.Stat. § 122.535, which is silent on the subject. During the 1987 legislative session, however, the Minnesota Legislature addressed this void in the statute. The Minnesota Senate passed S.F. No. 1044 on May 13, 1987. The bill would have amended Minn.Stat. § 122.535, subd. 2 to provide for the use of a combined seniority list. Eventually, the bill died in a House committee and never reached the floor for a vote. The legislature's action indicates a recognition that Minn.Stat. § 122.535 did not previously (and therefore still does not) permit a school board to use a combined seniority list in the absence of an agreement to the contrary.

## DECISION

The school board erred in using a joint seniority list. Its decision to place relators on ULA was arbitrary and contrary to law. We reverse and direct the school board to reinstate relators with pay and benefits retroactive to the date on which they were placed on ULA.

Reversed and remanded.